In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order of Liquidation of the GLOBE AND RUTGERS FIRE INSURANCE COMPANY.*

Supreme Court, New York County, April 27, 1933.

*John J. Bennett, Jr., Attorney-General* [*Joseph C. H. Flynn, Assistant Attorney-General,* of counsel]; *Basil O'Connor* [*John C. Farber* and *William F. Snyder* of counsel], for George S. Van Schaick, Superintendent of Insurance of the State of New York, in charge of Globe and Rutgers Fire Insurance Company, pursuant to an order of rehabilitation dated March 24, 1933, for the motion.

*Root, Clark & Buckner* [*Grenville Clark* of counsel], for the committee for the rehabilitation of Globe and Rutgers Fire Insurance Company and for Globe and Rutgers Fire Insurance Company; *Davis, Polk, Wardwell, Gardiner & Reed* [*John W. Davis* and *Porter R. Chandler* of counsel], for Rossia Insurance Company of America and The Metropolitan Fire Reassurance Company of New York; *Martin Conboy* [*Martin Conboy* and *David Asch* of counsel], for the committee representing creditors, policyholders, reinsurers, brokers and agents of the Globe and Rutgers Fire Insurance Company, opposed.

* See, also, 148 Misc. 501; 149 id. 16, 18.

FRANKENTHALER, J. This matter comes before the court upon the application of the Superintendent of Insurance for an order of liquidation of the Globe and Rutgers Fire Insurance Company, pursuant to subdivision 2 of section 402 of the Insurance Law. Previously, on March 24, 1933, an order directing the rehabilitation of the company was made and entered herein. The basis of the present motion is the opinion of the Superintendent that further efforts to rehabilitate would be futile. The application is opposed by the insurer, by a committee of rehabilitation and by certain reinsurers, on the plea that a reasonable opportunity should be afforded to submit a plan of reorganization to the creditors, policyholders and stockholders.

The Superintendent urges that his examination of the insurer's affairs discloses a condition rendering it hazardous to permit further transaction of business and necessitating liquidation. The Superintendent has been in possession of the assets of the insurer since the entry of the order of rehabilitation and has very properly stopped the writing of new business.

It appears that the respondent assented to the order of rehabilitation on March 24, 1933, upon an understanding with the Superintendent that a rehabilitation committee would be immediately organized and that legislation would be sought from Congress permitting the Reconstruction Finance Corporation to purchase preferred stock in insurance companies as well as in national banks, with a view to enabling respondent to obtain new capital from the Reconstruction Finance Corporation or else to convert an existing $10,000,000 loan, now payable to said corporation, into preferred stock.

The respondent insists that the period of only thirteen days elapsing between the granting of the order of rehabilitation and the filing of the present application on April fifth obviously failed to afford sufficient time to communicate with the creditors and policyholders for the purpose of obtaining their approval of the proposed plan of reorganization. It is vigorously argued on behalf of the respondent that the Superintendent has failed to show that further efforts to rehabilitate the insurer would be futile in that no reasonable opportunity has been furnished to submit the plan to the creditors, policyholders and stockholders. The insurer is the third largest fire insurance company in the country and transacts business in most, if not all of the States, in addition to doing business in many foreign countries.

The success of the plan of reorganization depends primarily upon the willingness of creditors having claims in excess of $17,000,000 to accept preferred stock in lieu thereof. In the event that Con-

gress should authorize the Reconstruction Finance Corporation to purchase preferred stock in insurance companies, it is suggested that new capital may be obtained from that corporation through the issuance of a first preferred stock which would have priority over the preferred stock issued to other creditors. In the alternative it is proposed that the Reconstruction Finance Corporation accept preferred stock having such a priority in exchange for its existing $10,000,000 loan which is not included in the $17,000,000 or more of claims above referred to. Of course, this necessarily presupposes the enactment of the enabling legislation. Counsel for the respondent further stresses the possibility of obtaining additional capital from private sources through the issuance of a second preferred stock with conversion privileges. Assuming that a plan of reorganization along the lines indicated can be consummated, the interests of the creditors, policyholders and stockholders would manifestly best be served by granting a reasonable length of time within which to obtain the consents and approvals necessary to put the plan into operation. If the entire plan be adopted, the solvency of the insurer would be restored and it might resume the writing of new business.

The investments of the insurer are carried on its balance sheet at the values of approximately $61,000,000. However, the market value of said investments aggregated only about $21,000,000 on March twenty-fourth. Since that time there has been some appreciation in the market values of the securities included in the portfolio of the insurer, although the papers now before the court do not disclose the exact extent of the increase.

Ordinarily, the court would be constrained to adopt the views of the Superintendent of Insurance, who has made a very detailed investigation of the insurer's affairs. The court has great confidence in his judgment and recognizes that the recommendations and views of an administrative officer, charged with the performance of statutory duties, are entitled to great weight and careful consideration, and are not to be disregarded or brushed aside except for cogent reasons. Nevertheless, section 408 of the Insurance Law clearly imposes upon the court the ultimate responsibility for the action to be taken upon the Superintendent's application. That section provides in part that " after a full hearing, which shall be held by the court or justice without delay, such court, or justice shall either deny the application or grant the same together with such other relief as the nature of the case and the interests of policyholders, creditors, stockholders, members, and/or the public may require." It is for the court to determine what course will best serve the interests of all concerned.

Subdivision 2 of section 402 of the Insurance Law, which author-

izes the present application, provides that " at any time the superintendent shall deem that further efforts to rehabilitate such insurer would be futile, he may apply to the court under this article for an order of liquidation." The question, therefore, presented for the court's determination is whether or not further efforts to rehabilitate the insurer would be futile. The court has made a very careful examination and detailed study of the numerous affidavits and exhibits filed in this proceeding and of the briefs submitted by able counsel. As the insurer has ceased the writing of new business and is presently under the control of the Superintendent, the court is of the opinion that the rights of creditors, policyholders and stockholders will not be impaired but rather conserved by the granting of additional time within which to endeavor to consummate the proposed plan of reorganization. In reaching this conclusion consideration has been given to the fact that no serious prejudice to those whose interests the Superintendent is seeking to protect would result from the granting of a reasonably short amount of additional time.

Since the filing of this application a momentous decision has been arrived at by those in control of our national government and the eyes of the court may not be closed to the apparent and demonstrated consequences of the new policy adopted. Our temporary abandonment of the gold standard has resulted in an upward surge in prices of commodities and securities. Undoubtedly there has been a marked change in sentiment on the part of the public. Confidence in the policy of the administration to lead the country out of the depression has visibly increased and this is evidenced by rapidly rising prices. The investments of the insurer have been augmented substantially in value since the entry of the order of rehabilitation, thus affording a greater measure of security to the creditors, policyholders and stockholders. That this change of sentiment is felt by the creditors of the insurer is made manifest by the numerous letters and telegrams from them, indicating their assent to the proposed plan of reorganization, which have been received since the making of the present motion. These letters and telegrams have been filed with the court and it is claimed that approximately two-thirds of the creditors have already indicated a willingness to accept the plan.

The administration in Washington is bending every effort to effect a restoration of confidence and to preserve the financial integrity of our institutions. The court may not disregard its plain duty to keep open the opportunity for a reorganization of the respondent's affairs on a basis that will be satisfactory to its creditors, policyholders and stockholders. In the meantime their interests

are being adequately protected with the Superintendent in control of the assets of the insurer and with no new business being written.

Twenty-one days have already elapsed since the Superintendent moved for an order of liquidation. Thirty-four days have gone by since the order of rehabilitation. During all this time those who have been endeavoring to bring about a plan of reorganization acceptable to the great majority of creditors, policyholders and stockholders have had considerable opportunity to procure necessary consents or indications of assent to the proposed reorganization. The letters and telegrams filed with the court indicate clearly that the sponsors of the plan of reorganization have not been idle. Under the circumstances, the allowance of an additional period of fifteen days within which to obtain the approval of those interested should be ample to enable the respondent to demonstrate that further rehabilitation would not be futile.

The application for an order of liquidation will accordingly be granted unless within fifteen days after the service of the order to be entered hereon the solvency of the respondent is assured to my satisfaction either through the assent of a sufficient number of the creditors, policyholders and stockholders to an acceptable plan of reorganization, or otherwise. Settle order.