In the Matter of the Liquidation of the STATE TITLE AND MORTGAGE COMPANY.

In the Matter of the Liquidation of GENERAL SURETY COMPANY.

Supreme Court, Additional Special Term, New York County, March 18, 1936.

*Alfred C. Bennett,* for the Superintendent of Insurance of the State of New York, as liquidator of the State Title and Mortgage Company.

*Harry Rodwin,* for the Superintendent of Insurance of the State of New York, as liquidator of General Surety Company.

FRANKENTHALER, J. Some months ago the Superintendent of Insurance, as liquidator of State Title and Mortgage Company and of General Surety Company, applied to the court for leave to compromise, as to most of the defendants, two actions commenced by him against the former directors of these companies for damages caused by the alleged violation of their duties as directors. *The applications were based solely upon the financial condition of the defendants* and were denied, with leave to renew, on the ground that insufficient facts in regard to the financial responsibility of the defendants were presented to the court. (*Matter of General Surety Company*, 158 Misc. 608.)

The Superintendent now seeks the court's approval of proposed settlements with various defendants, a separate application being submitted as to each of said defendants. The total amount now offered by the defendants involved in these applications is $143,850, which is *practically double* their previous offer which this court declined to approve. *All the applications, except four, are again predicated solely upon the financial circumstances of the respective defendants,* the Superintendent stating as to each of the defendants other than the four that he " is advised by his counsel that a large judgment would probably be obtained against this defendant upon the trial."

One of the defendants now offers $15,000 in settlement, more than double his previous offer. The defendant in question has admittedly been earning over $35,000 per year during the last three years. When asked whether his average earnings were over $50,000, he answered, " I don't *think* so." (Italics the court's.) Upon the examination of the defendant no questions were asked regarding transfers or gifts made by him during the past four or five years, nor were any questions asked regarding insurance carried by him. It must be obvious that an offer of $15,000 in settlement by one admittedly earning between $35,000 and $50,000 per year is wholly inadequate.

Another defendant has offered $25,000 in settlement, a substantial increase over his previous offer. This defendant is earning over $35,000 per year and has admitted a net worth of $69,242.35. He has also, concededly, made transfers of substantial amounts to his wife during the last four years, which it is possible may be the subject of successful attack upon a full disclosure of the surrounding facts. Without regard to these transfers and gifts, however, it appears to be evident that the offer is utterly inadequate in the light of the defendant's admissions as to his earnings and net worth.

Two other defendants now offer $60,000. One of them has an admitted net worth of $122,299, more than twice the amount of the

proposed compromise. This defendant also testified that he had a half interest in the income of two trusts of $160,000 each, the other half interest being owned by his wife. Although he stated that the principal " is beyond my control today," when asked whether the trusts are irrevocable, he answered in the negative. Without a full disclosure of the facts relating to these trusts, so that the court may determine for itself whether any part of the corpus could be reached by the Superintendent as a judgment creditor, there is manifestly insufficient basis for approving a settlement predicated solely upon the defendant's financial condition, even if it be assumed that the offer would be acceptable if the corpus may not be used to satisfy any judgment entered against the latter.

Another defendant, with an admitted net worth of $12,392.87, exclusive of a salary of $8,500, makes an offer of $5,000. This offer, too, appears to be insufficient, although not nearly to the same extent as those previously referred to.

Another offer of $4,500 is made by one who admits a net worth of at least $15,780 and an income of $8,500 per year. Moreover, this defendant's examination is unsatisfactory, for he admitted that he did not know whether the list of assets revealed by him upon his examination was a complete or correct one.

One defendant has increased his previous offer from $1,250 to $7,500. This defendant admits that he is in receipt of an annual assured income of about $9,400 plus additional income of "$1,200 or $1,300 a year." His bank balance at the time of his examination in February of this year was " about $3,000 or $4,000." In 1932 he made a gift to his daughters of his one-half interest in property owned jointly with his wife, which had cost $23,500 in 1930, and upon which he had expended at least $25,000. The examination revealed further that in 1934 he gave 100 shares of Lorillard common and 50 shares of Baltimore and Ohio stock to his wife. In view of the defendant's admitted income and the possibility of a successful attack upon the transfers referred to, his offer, in the court's opinion, is insufficient.

Another defendant has increased his original offer to $5,000. He has a half interest in a business whose earnings during the past five years have been from $30,000 to $40,000 per year before deduction of " taxes." In addition, this defendant receives a substantial annual income from another source. No questions regarding transfers or gifts during the past four or five years were asked of this defendant, nor was any inquiry made as to whether he possesses any insurance which could be reached by creditors. If the settlement for $5,000 were recommended solely upon the basis of this defendant's financial condition, his offer would clearly be unaccept-

able. The Superintendent's petition states, however, that the compromise for $5,000 is recommended partly for the reason that the defendant's liability is not clear because he resigned as a director of both companies " and he was not an officer of either company, and his liability, if any, is based solely on nonfeasance, and he may escape liability because of the operation of the Statute of Limitations." This statement represents little more than the conclusion of the petitioner. It is too meagre to enable the court to ascertain for itself whether there is any reasonable basis for the doubt expressed as to defendant's liability.

Similar observations are applicable to a defendant who has raised his offer to $1,000. He receives a salary of $9,000 per year and resides at one of our best hotels. When asked about 5,000 shares of stock which had been given to him about six years ago, he answered, " It really belongs to my wife. I never transferred it * * * made no transfers, except I have always considered the unlisted stock mentioned above belongs to my wife. * * * I never transferred them from my name as it was voting process certificates." Although the value of this stock, according to the defendant, is problematical, he testified that he had sold some of it in 1935 at 87½ cents a share and some at $1.25 a share and that " I'd sell it at about $6.00 a share but it is unlisted and as I understand it, no ready market." The value of this stock, therefore, according to the defendant's testimony, appears to be somewhere between $5,000 and $30,000. This defendant's liability is said to be doubtful because of the Statute of Limitations, but here, too, insufficient facts to enable the court to form any opinion as to the merits of this conclusion are presented.

A defendant who offers $3,500 admits that he gave about $200,000 to his wife only a few years ago, and that he receives a salary of $5,000 a year from a company in which his wife has an indirect interest of almost thirty per cent. As the settlement with this defendant is sought to be justified solely upon the basis of his financial condition his offer must be regarded as unsatisfactory.

The remaining applications involve seven offers averaging about $2,500 each. Two of the offers are made by defendants whose liability, according to the petition, is not entirely clear because the claims against them may be barred by the Statute of Limitations. Here again insufficient facts are submitted to the court to enable it to determine whether the conclusion of doubtful liability is a reasonable one under the circumstances. On the basis of the testimony of these defendants regarding their financial circumstances on their examination by counsel for the Superintendent of Insurance, it may be that their offers are reasonable. However, these offers

are so small in amount that unless the actions are settled as to those defendants who are of substantial means, there appears to be no particular advantage, from the standpoint of the creditors of the State Title and Mortgage Company and General Surety Company, in accepting and approving these offers. If the actions are to be tried in any event as to the financially responsible defendants, it may be that they might well proceed against the others also. It is possible that any judgments obtained against the latter will ultimately produce considerably more than the amounts offered by them. *They can yield little less.* On the other hand, if the actions should be compromised as to the wealthier defendants, the expense which a trial of the action as to the others would involve might render it advisable to accept their offers.

Under the circumstances, none of the applications submitted to the court will be granted at this time. Those referred to in the preceding paragraph will be held in abeyance. The others are denied, except that the applications which are based partly on doubtful liability may be renewed on fuller papers.

On the prior application for leave to compromise, the Superintendent of Insurance stated that notice had been given to the Mortgage Commission of the State of New York and that the Commission indicated that it did not disapprove of the proposed settlements. Notice of all the present applications, except three which do not involve the State Title and Mortgage Company, was likewise given to the Mortgage Commission. The latter takes the position that it " does not feel that it is capable of expressing a judgment on short notice with regard to a litigation that has progressed for a year and a half and with the details of which your Department [the Insurance Department] is completely familiar" and that " in the circumstances, therefore, it seems to us that we should abide by whatever decision you [the Superintendent of Insurance] may reach in the way of settlement."

As the complaint against the directors of the State Title and Mortgage Company seeks judgment of $5,000,000, much of which, if recovered, would go to the certificate holders of that company, it is difficult to understand the Commission's failure to make any recommendation as to the advisability of the proposed settlements of which it has been notified. As this court has recently pointed out, the Mortgage Commission was intended by the Legislature to act as representative of all unorganized certificate holders and has itself at various times expressed its recognition of this fact. Why it makes no effort to represent the interests of the unorganized certificate holders on this application is a question which the court is unable to answer. Obviously, the explanation that it is not

" capable of. expressing a judgment on short notice with regard to a litigation that has progressed for a year and a half " is utterly inadequate, for the applications, of which the Mortgage Commission was notified, with two exceptions, *are based solely on the financial condition of the various defendants and, therefore, require no investigation of the merits of the litigation* — not to mention the fact that the Commission could undoubtedly have obtained an adjournment for a sufficient length of time to permit it to look into the facts, had it chosen to apply for that relief.

It is with extreme reluctance that the court has found itself obliged to disagree with the judgment of the petitioner as to the desirability of some of the proposed settlements and to comment once more upon the attitude of the Mortgage Commission, a State agency. However, it is the plain duty of the court, whose approval is sought, to see to it that the unorganized certificate holders are properly represented and protected, and this duty the court may not shirk. The appeal for approval of the proposed settlements is directed to the sound discretion of the court. As this court said in *Matter of Globe & Rutgers Fire Ins. Co.* (148 Misc. 497, at p. 499), " the recommendations and views of an administrative officer, charged with the performance of statutory duties, are entitled to great weight and careful consideration, and are not to be disregarded or brushed aside except for cogent reasons. Nevertheless * * * the Insurance Law clearly imposes upon the court the ultimate responsibility for the action to be taken upon the Superintendent's application." The court's approval under section 421 of the statute may not be given upon the basis of doubtful liability without the presentation of enough facts to indicate that there is at least reasonable basis for the view that liability is doubtful, or upon the basis of financial irresponsibility, unless the financial condition of the defendant is such that his offer is a reasonable one. The facts disclosed, relating in most instances solely to lack of financial responsibility, and not to the merits of the litigation, are such that it would be an abuse of discretion to grant approval.