In the Matter of the Rehabilitation of LAWYERS MORTGAGE COMPANY. (No. 1.)

Supreme Court, Additional Special Term, New York County, January 23, 1936.

*Cabell, Ignatius, Lown & Blinken* [*M. B. Ignatius* of counsel], for the creditors' committee.

*Benjamin J. Rabin* [*Adolph Kaufman* and *Henry Weiner* of counsel], for the State Mortgage Commission.

*Abraham N. Geller*, for the certificate holders.

*Harry Rodwin*, for the Superintendent of Insurance.

FRANKENTHALER, J.  This motion by a committee of creditors of the Lawyers Mortgage Company to stay the Mortgage Commission from taking over the servicing of certificated mortgage issues guaranteed by that company has been withdrawn.  The withdrawal of the motion appears to have been based upon the committee's recognition that the take-over was accomplished as far back as May, 1935, and that there is no legal basis for granting the relief sought, especially in view of the fact that the Mortgage Commission Act (Laws of 1935, chap. 19) expressly authorizes the Commission's action.  It is unfortunate, however, that the Commission has seen fit to exercise its statutory right at a time when plans for the reorganization of the company were reaching an advanced stage, without permitting the servicing of the mortgages to remain with the Lawyers Mortgage Guarantee Corporation until a reasonable opportunity to consummate a plan of reorganization had been afforded to the creditors and others interested.  It is

undenied that the servicing of the mortgages by the Lawyers Mortgage Guarantee Corporation has been performed in an excellent and economical manner. Representatives of many holders of guaranties in very substantial amounts appeared on the return day of the motion to express their commendation of the manner in which the mortgages had been serviced. The representative of the Teachers Retirement Pension Fund said: " The servicing of this company has been so satisfactory that we have stayed with them through their entire period up to date of rehabilitation. We would like to have some arrangement whereby the company may continue and be able to continue with us, doing as satisfactory servicing as has been accomplished for the past twelve years." The representative of the Baron de Hirsch Fund said: " It has been our experience, dealing with them, with several and probably all of the mortgage guarantee companies, that we have met with more success in obtaining accurate information and better results from the servicing of mortgages handled by the present organization of the Lawyers Mortgage Company than from any of the other organizations, and we would regret to see that organization destroyed." The representative of the Webb Institute of Naval Architecture spoke in a similar vein: " I want to endorse what has been said. Your Honor has heard different persons express their high regard for the efficiency, for the ability displayed by the Lawyers Mortgage Company in connection with the servicing. It has been highly satisfactory. After all, servicing cannot be done in a standardized way. It cannot be standardized. You cannot do it that way. It is the close knowledge and contact with each particular piece of property that brings the best results. A smaller organization will get a better result than an enormous one endeavoring to standardize the situation. It is because of that close intimate knowledge of the Lawyers Mortgage Company with each of the properties that has brought the results that have been effected." Statements to like effect were made by other creditors. Under these circumstances it is deeply to be regretted that the Mortgage Commission has elected to withdraw the servicing from those who have earned the unanimous and enthusiastic approbation of the holders of the company's guaranties and to transfer the same to an entirely new staff of its own, without at least permitting the creditors and others interested in the company to have a reasonable opportunity to work out a plan of reorganization which would enable the company to retain control of the servicing. Although the Mortgage Commission Act and the Schackno Act contain provisions permitting the holders of guaranties to withdraw their mortgages from the Mortgage Com-

mission (Sections 9 and 10 of the Mortgage Commission Act [Laws of 1935, chap. 19] and section 6 of the Schackno Act [Laws of 1933, chap. 745, as amd.]), the exercise of those rights necessarily involves considerable delay. In the interim, the transfer of the servicing from the experienced staff which has been handling it to the comparatively inexperienced personnel employed by the Mortgage Commission will, undoubtedly, disrupt the excellent service which is being given at the present time and prejudice the interests of the guarantee holders. Moreover, the possibilities of successfully working out a desirable plan of reorganization will obviously be impaired by the take-over, for the most valuable asset of the company at the present time consists of its right to service the mortgages which are now being taken away from it. *The Mortgage Commission was concededly created for only a temporary purpose.* The very act which gave it birth expressly declared that its object was to facilitate the return of guaranteed investments to their owners (Art. 1, § 1, last sentence). As this court said in passing upon the plan for the reorganization of series C-2 (*Matter of New York Title & Mortgage Co., Series C-2,* 156 Misc. 667, at p. 677): " The following language of the Legislature renders it transparently clear that the dominant purpose of the act was to enable the holders of mortgage investments to organize themselves and withdraw their property from the control of the Mortgage Commission, a State agency (Art. 1, § 1): ' The Legislature, therefore, hereby declares the existence of a public emergency affecting the health, safety and comfort of the people, requiring the enactment of the provisions of this act. *Legislation adapted to meet the emergency by conferring power upon a new state agency to act promptly and to encourage, promote and facilitate self-organization by the holders of mortgage investments* until such time as there may be established other effective organizations for the administration of their interests is essential to protect the vital interests of the State.' (Italics the court's.) "

On the other hand, the company, if reorganized with the consent of the holders of its guaranties and others interested, will be permanent and not temporary in character. A take-over at this time can work little or no advantage to the holders of the company's guaranties, but it may well be the cause of irreparable damage to them. It is to be hoped that the Mortgage Commission will reconsider its action and decide to permit the servicing of the mortgages to remain with the Lawyers Mortgage Guarantee Corporation, *under the control of the Superintendent of Insurance,* until a reasonable opportunity to work out a plan of reorganization has been afforded to those interested.

The motion is marked withdrawn, in accordance with the request of the moving party.