In the Matter of the Rehabilitation of LAWYERS MORTGAGE COMPANY. (No. 2.)

Supreme Court, Additional Special Term, New York County, January 23, 1936.

*Cabell, Ignatius, Lown & Blinken* [*M. B. Ignatius* of counsel], for the creditors' committee.

*Abraham N. Geller*, for the certificate holders.

*Harry Rodwin*, for the Superintendent of Insurance.

*Benjamin J. Rabin* [*Adolph Kaufman* and *Henry Weiner* of counsel], for the State Mortgage Commission.

FRANKENTHALER, J.  This is an application by a com nittee of creditors of Lawyers Mortgage Company, now in rehabilitation, for the reorganization of that company in accordance with a proposed plan prepared by the committee, or such other plan as the court may finally approve.  Various kinds of relief are sought, the details of which will be referred to presently.

By order of this court, dated August 2, 1933, the Superintendent of Insurance was directed to take possession of the property of the company for the purpose of rehabilitating it.  The order was made pursuant to sections 401 and 402 of the Insurance Law.  It contained a provision authorizing and empowering the Superintendent to adopt, with such modifications as he might consider desirable, and subject to the court's further directions, a plan of rehabilita-

tion outlined in the petition. In accordance with said plan the Superintendent caused a separate company to be organized, known as Lawyers Mortgage Guarantee Corporation, for the purpose of taking over the servicing and other functions theretofore performed by Lawyers Mortgage Company. On May 11, 1935, Charles J. Mylod, then Special Deputy Superintendent of Insurance in charge of the rehabilitation of Lawyers Mortgage Company, caused a letter to be sent to certain of the larger creditors inviting them to attend a meeting to be held on May 23, 1935, for the purpose of formulating a definite program for the reorganization of the company and considering a tentative plan of reorganization prepared on behalf of the Superintendent of Insurance, the skeleton features of which were referred to in the letter. The letter stated that " experts in the field who devoted extensive study to the question are of the firm opinion that the best interests of the creditors of the Lawyers Mortgage Company will be promoted by a fair and equitable plan of reorganization, restoring the operation to a permanent and independent standing;" that Mylod had also reached the same opinion after careful analysis; and that " there is abundant evidence that this Company continues to enjoy the respect, confidence and cooperation of its certificate holders. As evidence in part of this statement, wherever the guaranteed mortgage situation is discussed, this Company is recognized as one that has the potentialities of a successful rehabilitation. I am firmly convinced from my experience at the Lawyers Mortgage Company that the certificate holders desire that a plan of reorganization be prepared which will lead to the preservation of the Company for their benefit." In a letter dated November 30, 1935, forwarded by Mylod to Superintendent of Insurance Pink, the former went so far as to state that " ever since the Lawyers Mortgage Company was taken over by the State for rehabilitation it has been generally recognized that this company is the strongest if not the only large organization that has a possibility of reorganization."

On May 21, 1935, the Mortgage Commission formally took over the certificated mortgage issues which had been guaranteed by Lawyers Mortgage Company, entering into an agreement, however, with the Superintendent of Insurance whereby the latter was permitted to continue the servicing of mortgages through the Lawyers Mortgage Guarantee Corporation as his agent, subject to the right of the Mortgage Commission to cancel this arrangement and service the mortgages itself or through some other agency. By letter dated November 27, 1935, the Mortgage Commission served notice of cancellation upon the Superintendent of Insurance and Lawyers Mortgage Guarantee Corporation, effective as of the close

of business on December 31, 1935, its intention being to transfer the servicing of the mortgages to a servicing corporation which it had caused to be organized for the purpose of servicing all certificated mortgages under its control.

In the meantime the committee of creditors which makes the present application had been designated at the meeting of May 23, 1935, and spent many months studying the situation and working upon the formulation of a plan for the reorganization of Lawyers Mortgage Company. The committee had proceeded upon the assumption that the Mortgage Commission would continue to permit Lawyers Mortgage Guarantee Corporation to service the certificated mortgages guaranteed by Lawyers Mortgage Company and had just about completed its work and prepared a tentative plan when the Mortgage Commission announced that it would service all the certificated mortgage issues through its own staff.

The present motion followed, as well as a companion motion by the committee to stay the take-over by the Mortgage Commission until it could be determined whether reorganization of the company was feasible. (158 Misc. 575.) The relief sought on the instant application may be summarized as follows:

(1) Leave to the committee to intervene in the rehabilitation proceedings for the purpose of submitting for the court's approval a proposed plan of reorganization annexed to the moving papers;

(2) The court's assumption of jurisdiction over the committee and the reorganization proceedings;

(3) Provision for hearings before a referee or otherwise upon the " fairness and equitableness " of the proposed plan on notice to creditors, stockholders and other parties in interest, the time and place of the hearings and the manner of giving notice to be determined by the court, and the expenses to be paid out of the assets in the hands of the rehabilitator.

The petition in support of this motion states that the meeting at which the committee was selected was attended by holders of certificates or mortgages, guaranteed by Lawyers Mortgage Company, of an aggregate principal amount of more than $26,000,000. The members of the committee are E. G. Lantman, executive secretary of the Teachers Retirement System, which holds guaranties totaling $8,690,685; Ridley Watts, a director of Chemical Bank and Trust Company, holding for various trusts guaranties of $2,022,932.88; Hubert E. Rogers, representing the Webb Institute of Naval Architecture, holding guaranties in the sum of $1,421,400; Mortimer N. Buckner, chairman of the board of trustees of New York Trust Company, holding for various trusts guaranties of $526,650; and Stanley M. Isaacs, vice-president of the Baron de

Hirsch Fund, owning $50,000 of guaranties. Counsel for the committee stated on the return day of the application that the proposed plan was only a tentative one and urged that an opportunity for a frank and full interchange of views be afforded to all those interested, to the end that a fair and equitable plan of reorganization might ultimately be worked out to the advantage and benefit of the holders of the company's guaranties.

The avowed purpose of the order of August 2, 1933, which placed the Lawyers Mortgage Company in the control of the Superintendent of Insurance, was the rehabilitation of the company. The order itself, as previously observed, provided for a plan of rehabilitation proposed by the Superintendent of Insurance. Although the Insurance Law (§ 402, subd. 2) authorizes the Superintendent at any time that he " shall deem that further efforts to rehabilitate * * * would be futile " to apply for an order of liquidation, no such application has ever been made. Neither the Superintendent nor the Mortgage Commission, both of whom appeared by counsel on the return day of the present motion, have made any claim that the reorganization of the Lawyers Mortgage Company is undesirable or not feasible. On the contrary, counsel for the Superintendent of Insurance, although not in favor of the specific plan proposed by the committee, made the following statement: " it is desirable that creditors have a chance to consider if they do want this very plan. If so, there is nothing more that can be said. It may be that this or some other plan that is more desirable will please them if this does not. * * * Without giving the slightest encouragement to this particular plan, I think it can well be said that a plan of reorganization ought to be considered to the fullest extent before we are forced, as we will be if no plan of reorganization is formulated, to liquidation of the company."

The affidavit submitted by the chairman of the Mortgage Commission states that " The Mortgage Commission is content to rely upon the Superintendent of Insurance, in the first instance, to take whatever steps he may deem proper " in connection with the application. At the hearing counsel for the Commission said: " With respect to the proposed plan of reorganization, the Mortgage Commission takes no position with regard thereto except to say that the Mortgage Commission, naturally, representing certificate holders who are creditors, would like to see something worked out to the best interest of creditors, and it is willing to follow the lead of the Superintendent of Insurance, on whom rests the duty of determining the question as to whether or not this plan or any other plan should or should not be promulgated, of course with the consent and with the advice of this court." Representatives of

creditors holding more than $15,000,000 of the company's guaranties appeared on the return day of the motion to voice their approval of the attempt to effect a reorganization of the company. *Not a single view to the contrary was expressed.*

As it seems to be agreed by all that the reorganization of the Lawyers Mortgage Company is desirable, if it can be accomplished upon a proper basis, the present motion will be granted and a referee appointed for the purpose of conducting hearings upon the plan proposed by the committee and such modifications or other plans as may be submitted for the consideration of the creditors, stockholders and those otherwise interested, including the plan proposed on a companion motion by counsel for one Friedlander and others. The expense of printing and mailing the proposed plans and the notice of hearing thereon as well as the expenses of the reference are to be paid out of the assets in the hands of the rehabilitator, on the condition suggested by the latter's counsel, viz., that the printing and mailing be performed under the rehabilitator's own direction. Settle order on three days' notice.