In the Matter of the Rehabilitation of UNION GUARANTEE AND MORTGAGE COMPANY.

Supreme Court, Additional Special Term, New York County, January 18, 1937.

*Cabell, Ignatius & Lown,* for Orrin R. Judd, A. M. Massie and T. Fergus Redmond, as a committee representing creditors.

*John T. Daly* [*Harry Rodwin* of counsel], for the Superintendent of Insurance of the State of New York.

*Jacob L. Holtzmann* [*John J. Clarke* of counsel], special counsel to the Mortgage Commission of the State of New York.

*Paul E. Mead* [*O. B. Lowman* of counsel], for the Irving Trust Company.

*Larkin, Rathbone & Perry,* for the Central Hanover Bank and Trust Company.

FRANKENTHALER, J.   This is a motion to confirm a referee's report approving a "Modified Plan of Reorganization for Union Guarantee and Mortgage Company." The referee was appointed, pursuant to an order of this court, to hear and report upon the fairness of a plan of reorganization proposed by a committee of the company's creditors.   Although the Superintendent of Insurance and the Mortgage Commission did not approve of the plan originally presented by the committee, they agreed that it was desirable to hold hearings in an endeavor to arrive at a fair and satisfactory plan which would receive the approval and support of the company's creditors and stockholders.

Extended hearings were held before the referee, as a result of which the plan underwent many amendments and modifications. The referee has approved the plan in its modified form and it is now sought to obtain the court's approval.  At the hearings before the court creditors of the company were represented not only by counsel for the Mortgage Commission and counsel for the Superintendent of Insurance, but also by attorneys for a creditors' committee and for various individual creditors.  The interests of stockholders were represented by counsel for a stockholders' committee, which in turn represents holders of more than eighty per cent of the company's stock.  As a result of the hearings before the court the plan which the referee has recommended for approval has been further modified in various respects.  In its modified form it meets with the approval of the creditors' committee and the stockholders' committee and is not opposed by the Superintendent of Insurance.

No useful purpose would be served here by describing the provisions of the plan in detail.  A brief summary of its main features will suffice.  The plan contemplates that within one month after its approval by the court, the Superintendent of Insurance, as rehabilitator of the company, is to apply for an order of liquidation, and that the creditors' committee and the assenting creditors are to co-operate with the Superintendent to the end that the liquidation proceedings may be completed and the claims of creditors definitely determined as soon as possible.  The assets of the company, with certain specified exceptions, are then to be sold at not less than an upset price to be fixed by the court, and it is contemplated that the creditors' committee, on behalf of assenting creditors and stockholders, will purchase the assets for a "New Company" to be formed by the committee.  The "New Company" is to liquidate the assets over a period of time and to do such servicing and operation of assets and only such new business as may be conducive to a proper liquidation.  The secured loans of the company, held by certain banks and by Reconstruction Finance Corporation, are to

be extended for a period of two years from the date the plan goes into effect. The "New Company" is to issue to all assenting creditors, except preferred creditors, who are to be paid in full, participation certificates of a face value equal to the amount of their respective claims as allowed in the liquidation proceedings. These certificates shall evidence the rights of their holders to participate in the assets and income of the "New Company" to the extent of the face amount of the certificates plus interest thereon at the rate of two per cent per annum during the first two years after the date of the order of liquidation, at the rate of three per cent per annum during the following two years, and at the rate of four per cent per annum thereafter. Distributions of principal and/or interest are to be made as and when the directors of the "New Company" determine and in such amounts as they may deem proper on the basis of the funds available therefor. The stock of the "New Company" is to be held by three voting trustees for a period of ten years unless all participation certificates shall have been previously paid or otherwise discharged or retired or unless the funds necessary therefor shall have been set aside for that purpose. Voting trust certificates for one-fourth of the stock of the "New Company" are to be issued *pro rata* to the holders of participation certificates and voting trust certificates representing three-fourths of the stock are to be distributed *pro rata* among the assenting stockholders of the present company in proportion to the number of shares of the latter's stock held by them. In the event, however, that the assenting stockholders shall pay to the "New Company," within six months after the ultimate determination of the claims filed in the liquidation proceedings and the transfer of the assets to the "New Company," "a sum sufficient for the payment to each assenting creditor of the full amount of his claim, together with interest thereon at the rate of six per cent per annum from the date of the order of liquidation, the Voting Trustees shall cause all the stock of the New Company to be distributed *pro rata* among the assenting stockholders in proportion to the number of shares of stock of the Old Company held by them." The voting trustees are to be appointed by the court "unless the assenting creditors by separate ballot by a two-thirds' vote in the amount of their allowed claims, choose to elect such Trustees." The voting trustees are to elect four-fifths of the board of directors for the assenting creditors and the remainder of the directors for the assenting stockholders. No dividend shall be declared or paid on the stock of the "New Company" until all the participation certificates shall either have been paid in full or otherwise liquidated and retired or the sums necessary to provide for the redemption

thereof set aside for that purpose. The plan further provides that after receiving the court's approval it is to become operative within the following four months or within such further extended period as the court may fix " if, upon proper application made by the Committee to the Court, the Court shall approve the proposed action of the Committee in declaring the Plan operative, and in addition shall be satisfied that (a) all secured creditors have consented to the provisions of Section 5 hereof [the two-year extension previously referred to], (b) persons holding at least seventy-five per cent of the presently outstanding guarantees of the Old Company have consented to the Plan, and (c) the holders of seventy-five per cent of the stock of the Old Company have consented to the Plan."

In the court's opinion, the plan, in its modified form, is *beneficial* to the interests of creditors and stockholders alike. In the absence of a satisfactory and effective plan of reorganization, the Superintendent of Insurance has indicated his intention to liquidate the company. This step would necessarily involve forced sales of various assets at sacrifice prices. On the other hand, adoption of the plan of reorganization will enable the creditors to assume direct control of the administration of the assets and to liquidate them over a longer period of time, thereby conserving the company's equity in assets pledged to secure bank and other loans and also enabling the creditors to ultimately realize the maximum yield from the company's other assets. As a gradual liquidation is calculated to yield a great deal more than would liquidation by the Superintendent of Insurance, which would necessarily be much more rapid, it is obvious that it is to the advantage of the stockholders as well as the creditors that the plan be adopted.

In the court's judgment, the provisions of the plan are also *fair* to creditors as well as stockholders. Unless the creditors' claims, with interest at the rate of six per cent per annum from the date of the order of liquidation, are paid in full within six months after the final determination of the claims and the transfer of the assests to the " New Company," the assenting creditors are to receive one-fourth of the stock of that company. Since no dividends or other distribution may be made on the stock until all participation certificates issued to creditors have been fully paid, it is clear that the stockholders of the present company will in no event receive anything on account of their stock until creditors' claims have been paid in full with interest. The creditors thus obtain the advantages of a gradual liquidation under their own control and at the same time, unless their claims plus interest are paid within the six-month period, receive a one-fourth interest

in whatever equity may remain after ultimate payment of their claims. The plan approved by the referee provided, it is true, that one-half of the stock in the " New Company " was to be distributed to creditors. Such a provision would, of course, be more desirable from the standpoint of creditors than that contained in the plan as subsequently modified. In view, however, of the opposition of counsel for the committee representing more than eighty per cent of the stockholders, it was manifest that the plan, if it contained such a provision, would not receive the approval of at least seventy-five per cent of the stockholders, the amount required to make it effective, and the efforts to achieve a plan of reorganization would thus prove abortive. The issue as to whether twenty-five per cent or fifty per cent of the stock of the " New Company " should go to the creditors is not serious enough to warrant disapproval of the modified plan, for there is considerable doubt whether the stock of the " New Company " will be of substantial value under the formula as to allowance of claims announced by this court, particularly since the " New Company " is not to engage in new business except such as shall be conducive to the liquidation. As heretofore stated, the plan in its present form is satisfactory to counsel for the stockholders' committee as well as to counsel for the creditors' committee, and it is not opposed by the Superintendent of Insurance. It appears to be the fairest and most advantageous plan, from the standpoint of the creditors, which will receive the consent of the requisite number of stockholders to permit it to become operative. Unless the present plan is approved and becomes effective, the Superintendent of Insurance will have no alternative but to liquidate the company and the interests of creditors and stockholders alike will suffer, for liquidation by the Insurance Department must be much more rapid than that contemplated by the plan. No valid reason for withholding approval of the plan has been advanced. The plan in its modified form is accordingly approved by the court. Settle order upon three days' notice.