In the Matter of the Liquidation of NEW YORK TITLE AND MORTGAGE COMPANY (Creditors' Committee).

Supreme Court, Additional Special Term, New York County, April 13, 1937.

*Wagner, Quillinan & Rifkind* [*Simon H. Rifkind* and *Sidney R. Nussenfeld* of counsel], for the creditors' committee of the New York Title and Mortgage Company.

*M. Finkelstein* [*J. L. Holtzmann* of counsel], for the Mortgage Commission of the State of New York.

FRANKENTHALER, J. This is an application by the creditors' committee of New York Title and Mortgage Company for leave to intervene in the proceeding for the liquidation of said company and for permission to submit to the court and to all parties in interest a proposed plan of liquidation and reorganization. The petitioners ask that the court take jurisdiction over the committee and the plan and that hearings be held before a referee or otherwise on the question of the fairness of the plan, at which any creditor or stockholder may be heard.

The most important asset now in the possession of the liquidator is the stock of the New York Title Insurance Company, which was organized shortly after the order of rehabilitation for the purpose of permitting the continuation of the title insurance business formerly done by the New York Title and Mortgage Company. In support of the present application counsel for the creditors' committee points out that it will be distinctly advantageous to the creditors to take the control of the New York Title Insurance Company out of the hands of the liquidator and place it in the control of the creditors themselves. His argument is best summed up by quoting from his remarks: " Now, I say that as a result of that experience the committee came to the conclusion that it was time that steps were taken to put the creditors in charge of their assets, that a system of lifting the most important asset that we have, the New York Title Insurance Company, out of public control and into private control was indispensable if that company was to go forward under its own steam, stop the losses from which it was suffering, and go forward with the possibility that it may resume its former status as one of the very important title companies operating in the metropolitan area. We felt that that could not be accomplished so long as the company suffered from the public acknowledgment that it was in the hands of a receiver, and the Superintendent of Insurance is, after all, a statutory receiver of the company. That does not reflect or suggest any reflection upon the administration of that company by the Superintendent. It is in the nature of things that an organization, whether it be a bank or insurance company or title company, and particularly a title company, which is engaged in the business of selling the longest-term contract known to man,—

that such a company cannot function when its day to day existence is to some extent placed in doubt by reason of the very fact that it is in the control of a statutory receiver."

There is another important advantage to be gained by transferring control of the New York Title and Mortgage Company from the liquidator to the creditors themselves. The liquidation of the other assets of the New York Title and Mortgage Company could be conducted in a more gradual and efficient manner by a realization corporation under private control than it could be by the Superintendent of Insurance, who is subject to various statutory provisions and restrictions which require him to liquidate within a fairly short period of time and which prevent him from exercising the same freedom of action as would be possessed by private individuals. Similar considerations to these induced this court to approve a plan of reorganization for Union Guarantee and Mortgage Company (*Matter of Union Guarantee & Mortgage Co.*, 161 Misc. 882). The court there pointed out (p. 885) that " a gradual liquidation is calculated to yield a great deal more than would liquidation by the Superintendent of Insurance, which would necessarily be much more rapid."

Counsel for the Mortgage Commission, at the hearing of the present application, joined in the same and asked that an inquiry be conducted into the possibilities of a plan of reorganization. Although he refrained from approving the particular plan proposed by the petitioners, he expressed the view that a sound basis for readjustment does exist. Others present took the same position.

Counsel for the Superintendent of Insurance, although recognizing " that the creditors should have every opportunity to present a feasible plan which would meet with the general approval of a substantial portion " of them, stated that the specific plan proposed by the creditors' committee is not best fitted to the particular requirements of the New York Title and Mortgage Company and requires considerable modification. Accordingly he suggested that the court withhold appointment of a referee until a better plan could be worked out through conferences between the petitioners, the Superintendent of Insurance and others. This was also the view taken by counsel for the stockholders of the New York Title and Mortgage Company.

In the court's opinion, however, efforts to arrive at a more desirable plan through preliminary conferences between creditors, stockholders and the Insurance Department would entail many months' delay, with little prospect of success. As counsel for the Mortgage Commission pointed out at the hearing, it is necessary, as a prerequisite to the formulation of a plan of reorganization,

to ascertain the underlying facts and " the only real way of ascertaining the facts is by a development of the facts at a judicial hearing." Representatives of other creditors expressed similar views. One of them stated that the preliminary conferences could not make much headway unless conducted under the direct supervision of the court. Another emphasized the difficulty of arriving at a proposed plan of reorganization in preliminary conferences, in view of the magnitude of the company and the number of attorneys and interests involved. It is the court's belief that no useful purpose can be served under the circumstances by holding preliminary conferences. The prospects for working out a successful plan of reorganization in the near future will be much greater if a referee is appointed, forthwith, to investigate the facts and the possibility of a reorganization and to hear and report on the suggestions made by the various parties involved. This procedure has met with success in previous reorganization proceedings before this court, such as that of *Matter of Union Guarantee & Mortgage Co.* (*supra*) and *Matter of Lawyers Mortgage Co.* (158 Misc. 579). The expenses involved in connection with the reference will be the fee of the referee, the cost of the stenographer's minutes and the actual cost of printing, mailing and publishing notices to creditors and stockholders. No other allowances are to be made unless the efforts to achieve reorganization prove successful.

The referee is to be empowered to pass not only upon the plan proposed by the petitioners, but also upon any other plans which may be submitted to him and/or upon any suggested modifications or amendments to any plan or plans before him. The request of the petitioners that objections not filed by a day certain, to be fixed at this time, be barred does not meet with the court's approval and will be denied. The manner in which notices of the entry of the order to be entered hereon and of hearings before the referee are to be given, is to be determined by the referee himself.

The motion is accordingly granted to the following extent: (1) The petitioners are permitted to intervene and submit to the court the proposed plan of liquidation and reorganization outlined in their moving papers; (2) the court assumes jurisdiction over the committee and over the proposed plan; (3) a referee will be appointed to take proof as to the fairness and equitableness of the proposed plan and of any other plans which may be submitted to him, together with any suggested modifications or amendments; (4) the referee is to fix the time and place of hearings at which any party in interest, including any creditor or stockholder, may be heard, and he is also to determine the manner in which notices of the entry of the order to be entered hereon and of the

hearings are to be given to those interested; and (5) the only expenses to be allowed, unless a reorganization is achieved, are to be the fee of the referee, the compensation of the stenographer, the cost of printing, mailing and publishing notices, and incidental disbursements.

Settle order.