PEOPLE v. AMERICAN CENTRAL INSURANCE CO.

1. TAXATION—INSURANCE—REINSURANCE—FOREIGN CORPORATIONS.
   A foreign insurance corporation lawfully doing business in Michigan, is not liable for the statutory tax upon the original premiums received by a domestic company on that portion of the risk which the foreign company has reinsured, when the local insurance corporation has paid the tax assessed against it, under Act No. 164, Pub. Acts 1903 (3 How. Stat. [2d Ed.] § 8082). Payment of the tax in this manner relieves the reinsuring company. The statute provides for a specific tax upon the gross amount received in premiums after deducting the premiums which may have been returned upon canceled policies, and the phrase "in any manner," as employed in the proviso, refers to the two usual methods of reinsurance.

2. SAME—REINSURANCE.
   The term reinsurance means either the substitution of a

new insurer with the consent of the policy holder, releasing the original insurer, or the indemnification by one company of another on account of risks which the indemnified concern continues to carry.

Error to Ingham; Wiest, J. Submitted February 3, 1914. (Docket No. 176.) Decided March 26, 1914.

Assumpsit by the people of the State of Michigan against the American Central Insurance Company for unpaid taxes. Judgment for defendant, and plaintiff brings error. Affirmed.

*Grant Fellows*, Attorney General, *S. D. Pepper*, Assistant Attorney General, for appellant.

*Arthur P. Hicks*, for appellee.

Ostrander, J. By 2 Comp. Laws, § 7257 (3 How. Stat. [2d Ed.] § 8082), it is, among other things, provided:

"Any fire insurance company, association, or partnership incorporated by or organized under the laws of any other State, or any foreign government, doing business within this State, shall, as a condition precedent to the renewal of an annual certificate by the secretary of State, make and file in the office of the State treasurer, annually, in the month of January of each year, on oath or affirmation, a statement of the number of fire policies issued by its agents, and procured by or written for subagents, solicitors, or brokers, upon property owned by residents of, or situate in the State of Michigan; also, a like statement of the marine insurance business transacted in the State of Michigan, and the gross amount of premiums received or secured thereon during the year then terminated; and shall pay into the hands of the State treasurer a specific tax of three per cent. on the gross amount of all premiums received in money or securities during the said year."

By Act No. 118, Public Acts of 1899, there was added to the law the following:

"And in ascertaining the gross amount of all premiums received or secured, the return premiums on canceled policies shall be deducted, and shall not be included in the term 'gross amount of premiums;' and such deductions shall not include any moneys paid by any company for reinsurance."

By Act No. 164, Public Acts of 1903, this section was again amended, and the entire section reads now as follows:

"Any fire insurance company, association or partnership incorporated by or organized under the laws of any other State, or any foreign government doing business within this State, shall, as a condition precedent to the renewal of an annual certificate by the commissioner of insurance, make and file in the office of the State treasurer, annually, in the month of January of each year, on oath or affirmation, a statement of the number of fire policies issued by its agents, and procured by or written for subagents, solicitors or brokers, upon property owned by residents of or situate in, the State of Michigan; also, a like statement of the marine insurance business transacted in the State of Michigan, and the gross amount of premiums received or secured thereon during the year then terminated; and shall pay into the hands of the State treasurer a specific tax of three per cent. on the gross amount of all premiums received in money or securities during the said year, and in ascertaining the gross amount of all premiums received or secured, the return premiums on canceled policies shall be deducted, and shall not be included in the term 'gross amount of premiums;' which said specific tax may be recovered from any company neglecting or refusing to pay the same in any court, at the suit of this State, and shall be and hereby is appropriated to the same uses and purposes as the specific tax on such corporation are or hereafter may be; and it shall be the duty of the State treasurer to give his receipts for all moneys paid into the State treasury under the provisions of this act: *Provided, however,* that when, by the statutes or rulings of the insurance department of any State, a tax is laid or levied upon the amount of the gross receipts of premiums received upon any com-

pany organized under the laws of this State and doing business in such State, which amount of gross receipts shall include return premiums, then insurance companies from that State doing business in this State, shall be taxed upon the amount of gross receipts for premiums without excluding the cancellation: *Provided, further,* that all companies transacting any reinsurance business in any manner shall pay the above tax upon the original premium received by the reinsured company on that portion of the risk reinsured: *Provided, however,* said reinsuring company may deduct from such premiums that portion of such premiums upon which the reinsured company has paid the above three per cent. tax." 3 How. Stat. (2d Ed.) § 8082.

Defendant is a foreign fire insurance company, and it is alleged that beginning with and including the year 1903, and up to and including the year 1912, it did not pay and was not required to pay a tax upon premiums received by it from Michigan fire insurance companies for reinsuring risks of those companies. It is stipulated that:

"Defendant included in the tax statement for the years 1903 to 1913, inclusive, under the item on said blanks 'policies and aggregate amount of premiums reported for taxation by the original insuring company upon that portion of the risks reinsured in this company,' the portion of the premiums on policies written by insurance companies organized under the laws of Michigan on property situated in Michigan which had, during such year, been reinsured by defendant, and the amount of such premiums was deducted from the total of premiums received by the defendant company in determining the item in said blanks 'the balance upon which a tax of 3 per cent. is to be paid.'

"The amount of the deductions, which consisted of the proportion of the premiums on Michigan risks, reinsured from Michigan companies, which had been reinsured by the defendant company for each of the respective years 1903 and 1913, was as follows:

| Year. | Premium received. |
|---|---|
| Business of 1903............................ | $13,338 45 |
| Business of 1904............................ | 12,932 30 |
| Business of 1905............................ | 13,675 84 |
| Business of 1906............................ | 15,859 99 |
| Business of 1907............................ | 12,676 30 |
| Business of 1908............................ | 9,530 42 |
| Business of 1909............................ | 9,370 86 |
| Business of 1910............................ | 8,584 27 |
| Business of 1911............................ | 245 78 |
| Business of 1912............................ | 7,114 29 |
| Total............................ | $103,328 50 |

"In case the court should find defendant liable in this action for a tax of 3 per cent. on reinsurance premiums received by defendant from Michigan companies on risks located in Michigan for any of the years 1903 to 1912, it is agreed that such tax shall be computed for such years upon the amount stated opposite such year."

Michigan fire insurance companies pay an *ad valorem* tax. The question is whether foreign fire insurance companies are required to pay a specific tax upon premiums received by them from Michigan companies, whose risks they reinsure. The question is answered when the legislative purpose is determined; a determination to be reached, if possible, from the language employed in the statute, and, if that is ambiguous, then by the use of proper aids to construction.

There is some apparent, but little real, ambiguity in the statute. It relates entirely to foreign fire insurance companies. It imposes a tax which the company must pay annually, if it continues to do business in the State. The tax is computed upon the gross premiums received for insuring property in the State, deducting premiums returned with canceled policies. It is a specific tax upon business transacted by the insuring company.

The term "reinsurance" has two meanings. When a fire insurance company, with the consent of the insured, is substituted for another fire insurance com-

pany, so that the insured releases the original insurer and looks to the substituted company alone, reinsurance has been effected. A company desiring to cease doing business entirely, or in a particular State, may thus reinsure its risks. Usually the term is used with another meaning, which is that one fire insurance company indemnifies another on account of risks which the indemnified company is carrying and continues to carry. In such a case, the insured looks only to the company which issues its policy to him. A company may thus reinsure its risks, in whole or in part, by contract with the reinsuring company, and, with respect to the indemnity so secured, no new policies be written or issued. The company issuing the policy collects the premium from the insured. It pays the reinsuring company for its promise of indemnity. Whatever the form of reinsurance, it is plainly the meaning of the statute that a reinsuring company shall be liable to pay the whole or some part of the tax of 3 per cent. upon the gross amount of the original premiums received for risks. The tax need be paid but once and but by one company; i. e., if the original insurer does not pay it, the reinsurer must do so. Both are liable, where, before the act of 1903 was passed, only the original insurer was liable. This, I think, the second and third provisos make clear.

It is true the office of a proviso in a statute is, usually, to explain, modify, qualify, the enacting clause, and not to enlarge it. While this is the appropriate and the presumed office of a proviso, it may be clearly designed to perform some other office. And so it has been held that a proviso may be construed to enlarge the scope of the act, or to be equivalent to an independent enactment. 36 Cyc. p. 1161 *et seq.* Here, in accord with what seems the plain intention of the legislature, I construe the statute in such man-

ner that the second and third provisos operate to make the reinsuring company liable for the tax upon the original premium paid to the insuring company, discharged of such liability, if the insuring company, as it is bound to do, pays the tax. The words "in any manner," in the proviso, mean in either manner herein indicated for reinsuring. This construction gives effect to every portion of the statute.

Fairly, construction can take us no further. The legislature has not imposed a tax upon the sums paid by insuring to reinsuring companies, whether the insuring companies are foreign or domestic companies. The executive departments have also so construed the act.

We must therefore deny the contention of the learned attorney general that a foreign fire insurance company, which reinsures the risks of a Michigan fire insurance company, is liable to pay a tax of 3 per cent. "upon the original premium received by the reinsured company on that portion of the risk reinsured."

The judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.