THE COURT.
 

 The above numbered appeals have been taken by the four named appellants, policyholders of the Pacific Mutual Life Insurance Company of California, from an order of the Superior Court in and for the County of Los Angeles, affirming a plan of rehabilitation of that company proposed by the state insurance commissioner pursuant to the provisions of section 1043 of the Insurance Code. (Stats. 1935, chap. 145; Deering’s 1935 Supp. to Codes, Laws and Const. Amendments, Act No. 3748, p. 878.)
 

 In appeal L. A. No. 16182, and solely in connection with appellant Neblett, a motion of respondents Day, Fabling, Gantz, Paschall and Wetzel to strike the opening brief' of appellant Neblett from the files has been submitted to be decided with the cause on its merits. The motion is made on the ground that the challenged brief contains disrespectful and impertinent language directed against two judges of the trial court, against the attorney-general and his deputies, and against the insurance commissioner. Neither the insurance commissioner nor his counsel has joined in this motion.
 

 Mr. Neblett is an attorney of long standing. In the court below he appeared by counsel, but on this appeal filed the challenged brief
 
 in propria persona.
 
 No useful purpose would be served in setting forth in detail the charges and objectionable matter found in the brief. The appeal is taken upon the judgment roll. None of the evidence • introduced
 
 *314
 
 below is before us. Notwithstanding this fact appellant Neblett has made many charges and insinuations which could be supported, if at all, only by a reference to the evidence. While he contends that his charges are supported by the judgment roll, an examination of the record discloses that his contentions are not supported therein. If evidence was introduced below on these matters, and appellant Neblett desired to discuss them, he should have brought the record before us. This he has not done. The reference thereto in the brief, under the circumstances, is unjustified. Moreover, many of the charges are couched in highly intemperate and improper language which under no circumstances of the case could be sanctioned.
 

 There can be no doubt of the power of an appellate court to strike from its files a brief or other document containing disrespectful, scandalous, or abusive language directed against the courts, officials, or litigants, or to take such other action as the circumstances may require.
 
 (Estate of Randall,
 
 177 Cal. 363 [170 Pac. 835];
 
 Gage
 
 v.
 
 Gunther,
 
 136 Cal. 338 [68 Pac. 710, 89 Am. St. Rep. 141];
 
 San Diego Water Co.
 
 v.
 
 San Diego,
 
 117 Cal. 556 [49 Pac. 582];
 
 Sears
 
 v.
 
 Starbird,
 
 75 Cal. 91 [16 Pac. 531, 7 Am. St. Rep. 123].) The experience of attorney Neblett has been such that it must be assumed that in presenting the improper argument to this court he was mindful of the significance of the language used. In view of the widespread interest in, and the public importance of these causes, and in view of the fact that several of the contentions made can only be properly considered by a reference to the challenged brief, we think the ends of justice would best be served by denying the motion to strike.
 

 As already stated, the appeals are upon the judgment roll. That record consists of over 1450 printed pages. In order to understand the contentions of the parties it is necessary briefly to summarize, chronologically, the contents of the judgment roll.
 

 On July 22, 1936, there was filed in the court below by Samuel L. Carpenter, Jr., as insurance commissioner of the state of California, a petition entitled, “Application for Order Appointing Conservator”. The petition recites that the Pacific Mutual Life Insurance Company of California is a California corporation engaged in the business of life,
 
 *315
 
 health and accident insurance in this and other states; that the commissioner, pursuant to his statutory duty, together with a number of insurance commissioners from other states, has made a convention examination of the business of the named insurance company as of December 31, 1935, a copy of the report being annexed to the petition; that such examination disclosed that the company’s affairs are such that its further transaction of business would be hazardous to its policyholders, its creditors and to the public; that the company is insolvent within the meaning of that term as defined in the Insurance Code; that the hazardous and insolvent condition is principally caused by reason of the fact that for many years the company has issued a large number of noncancellable accident and health policies (hereafter referred to as non-can policies) at a rate inadequate to maintain the lawful reserves behind such policies; that it is necessary that the commissioner be authorized to immediately take possession of all the assets of the company for the purpose of conserving them in the interest of all the policyholders, creditors and stockholders and the public in general; that it is necessary that the commissioner be appointed conservator and that certain described restraining orders permitted by the Insurance Code be issued. It is further alleged that the insurance company has assets in excess of $200,000,000 and has obligations on policies issued in excess of $600,000,000, insuring the lives and health of policyholders in excess of 200,000 persons; that in addition the company has outstanding in excess of 75,000 accident and health policies; that because of the magnitude of the business it is proper as a matter of public policy that petitioner be authorized and directed to work out a rehabilitation and reinsurance plan to protect the interest of all. The attached report of the convention examination discloses that as of December 31, 1935, there was a deficiency of approximately $23,000,000 in the reserves behind the non-can policies, but that as to its life and other policies the company was in a sound position. The report likewise discloses that the difficulties of the company were largely caused by the sale of non-can policies at an inadequate premium rate.
 

 On the same date the insurance company filed its appearance and consent that the cause might be immediately presented and tried, and likewise consenting to the relief prayed for by the commissioner. The matter was thereafter pre
 
 *316
 
 sented to Judge Edmonds, then judge of the Los Angeles County superior court, and on July 22, 1936, he issued an order appointing Carpenter conservator of the company and granting the other relief prayed for in the petition.
 

 Immediately thereafter, and on the same day, Carpenter filed an “Application for Order to Liquidate”, reciting his appointment as conservator; that the company is insolvent; that further efforts to proceed as conservator would be futile; that the best interests of all concerned would best be served by appointing him liquidator; that in order to preserve the valuable intangible assets of the company, such as its good will and its agency organization, it is necessary that a rehabilitation and reinsurance plan be worked out. The commissioner prayed that he be appointed liquidator; that his title as conservator be confirmed; that he be authorized and directed to work out a rehabilitation and reinsurance plan; and that certain restraining orders be issued. The company having filed its consent to the making of the order, Judge Edmonds, on July 22, 1936, granted the petition appointing Carpenter liquidator and granting the other relief prayed for substantially in accordance with the prayer of the petition.
 

 Immediately thereafter, and on the same day, there was filed by the Commissioner a “Petition for Order Permitting, Approving, and Authorizing Rehabilitation, Sale and Transfer of Assets, and Reinsurance Plan and Agreement of the Pacific Mutual Life Insurance Company of California”. The petition recites the steps already taken, and that, pursuant to the prior orders, the commissioner has worked out a .rehabilitation and reinsurance plan, a copy of which is attached, and prays for its approval. The proposed plan (which as slightly modified is the plan the approval of which is challenged on these appeals) so far as now pertinent, provided for the organization by the insurance commissioner of a new corporation to be known as the Pacific Mutual Life Insurance Company with a capital of $1,000,000 consisting of 10,000 shares of the par value of $100 each; for the commissioner to purchase all of the outstanding stock of this new company with assets of the old company for $3,000,000; for petitioner to transfer to the new company substantially all of the other assets of the old company, excepting the stock of the new company; and for the new company to agree by contract to assume all the policies and obligations of the old company to the extent provided in the agreement. Under
 
 *317
 
 this proposed contract the new company was to agree to reinsure all life policies on exactly the same terms as such policies had been issued by the. old company. Any life policyholder not assenting to the plan was to file a claim with the commissioner as liquidator of the old company, all allowed claims to be paid by the new company as limited in the agreement. As to non-can policyholders, the new company was to agree to assume and to reinsure their policies at existing premium rates, but disability payments on such policies were to be assumed on a basis of from 20 per cent to 90 per cent of the face of such policies depending upon the year of issue. Certain provisions were incorporated in the proposed agreement for future increased benefits to be paid to consenting non-can policyholders from certain profits of the new company. Nonconsenting non-can policyholders were to file claims with the commissioner as liquidator of the old company, all allowed claims to be assumed by the new company as provided in the agreement. The petition for the approval of this proposed plan of rehabilitation alleged that if it were approved the business formerly carried on by the old company could continue without interruption and the intangible assets such as good will and agency organization would, so far as possible, be preserved.
 

 On July 22, 1936, after notice to the old company and the filing of its consent, and after finding that the plan was fair and equitable to all concerned, Judge Edmonds made an order permitting and approving the proposed plan and authorizing the execution of the proposed agreement and the transfer of the assets as therein provided.
 

 On July 23, 1936, the commissioner petitioned for approval of an amendment to the rehabilitation plan, the court’s jurisdiction having been retained in the order of July 22d. The amendment was approved and authorized by order of Judge Edmonds made and entered the same day.
 

 On July 23, 1936, the new company filed a “Petition for Intervention and for Order to Show Cause”. The petition recited the proceedings already taken, and the fact that pursuant to order of court the new company had been organized and the rehabilitation agreement executed. The new company petitioned for leave to intervene for the purpose of having its title to the assets of the old company and all the 'other steps already taken confirmed upon hearing of an order to show cause to all interested. On the day this petition was
 
 *318
 
 filed, Judge Edmonds granted the petition to intervene and ordered all interested to show cause on a day certain why all actions already taken by the court or by Carpenter pursuant to the prior orders should not be ratified, confirmed and approved.
 

 Shortly after July 23d, various persons—stockholders, policyholders, or directors of the old company—in response to the order to show cause filed complaints in intervention. All requested that the prior orders be set aside, attacked the provisions of the Insurance Code under which the orders had been made as unconstitutional, and attacked the rehabilitation plan as being unfair, discriminatory, and illegal.
 

 On August 11, 1936, Judge Willis, Judge of the Superior Court of Los Angeles County, made an “Order Appointing Conservator and Restraining Order”. It is therein recited that on July 22d a petition of Carpenter to be appointed conservator was filed and granted by Judge Edmonds; that since that date Judge Edmonds had advised the court that he is the holder of a life policy in the old company in sum of $5,000; that because of the doubt as to Judge Edmonds’ qualifications because of the ownership of such policy it appears advisable to the court that it should rehear and reconsider the petition. The court thereupon decreed that the order of July 22d of Judge Edmonds appointing Carpenter conservator be “ratified, approved and confirmed; and that said order and said restraining order be and they are now hereby adopted and continued in force”. In addition, however, the court ordered that Carpenter “be and he is hereby appointed conservator of said respondent corporation, its business, assets, and affairs, and that said commissioner be and he is hereby ordered to take possession forthwith of all the books, records, property, real and personal, and assets, wheresoever situated of said respondent corporation, and to conduct, manage, transact and operate the business and affairs of respondent as a going insurance business, and to do any and all things which the petitioner may deem necessary and appropriate for that purpose”. The court also ordered Carpenter as conservator to work out a rehabilitation and reinsurance plan, and issued the requested restraining orders. The court concluded its order with the statement that the making of this new order did not constitute a revocation of the orders made by Judge Edmonds nor a ruling with respect to his qualifications. It is to be noted that by this
 
 *319
 
 order of August 11th, Judge Willis not only purported to confirm and ratify the prior order of Judge Edmonds, but also made his own order appointing Carpenter conservator of the old company.
 

 On August 13th, Carpenter, as conservator, petitioned to be appointed liquidator, which petition so far as the record here presented is concerned, never has been acted upon. On August 14th, Carpenter filed a “Petition with Respect to Rehabilitation, Sale and Transfer of Assets and Reinsurance Plan and Agreement”, in which after reciting the prior steps taken and the doubt in reference to the validity of the orders made by Judge Edmonds, Carpenter asks for confirmation of his prior acts, and authorization to proceed. Apparently no further steps were taken in reference to this petition.
 

 Thereafter the commissioner and the new company filed answers to the many pleadings filed by interveners and others. Between August 14th and August 29th, many other parties and groups of parties responded to the order to show cause and filed objections to the confirmation of the plan. On August 29th, the trial court through Judge Willis made and entered its order granting the petition of the new company to intervene as of the date of the filing of its petition, July 23, 1936, and adopting and ratifying the Edmonds’ order to show cause. Thereafter many other parties appeared and filed pleadings objecting to the plan of rehabilitation.
 

 We now come to the start of the specific proceedings ultimately resulting in the specific order here sought to be reversed. On September 25, 1936, Carpenter as conservator filed a “Petition for Approval of Rehabilitation and Reinsurance Agreement”. By this petition the commissioner, pursuant to the orders of Judge Willis of August 11th, sought approval of the rehabilitation plan worked out by him. The petition recites substantially the same facts already reviewed in connection with the similar petition filed on July 22, 1936. It is further recited that pursuant to court order Carpenter as conservator has taken possession of the business and assets of the old company, and has carried on the business of the old company; that it is in the interests of all concerned to preserve the good will, the agency organization and the going concern value of the old company; that in order to accomplish these ends the commissioner organized the new company and on July 22, 1936, purchased all its stock with $3,000,000 of old company funds, and on the same
 
 *320
 
 date transferred to the new company all the other assets of the old company except the stock of the new company and certain described claims; that “since said July 22, 1936, your petitioner, as conservator, and through the agency and instrumentality of the new company, has continued to carry on and conduct the business and affairs of the old company, and to preserve, so far as possible, its good will, going concern value, and agency organization”. The petitioner also recites that as conservator he has given diligent study and attention to the problem of determining what steps would best serve the interests of all concerned; that he has invited the presentation of plans and offers; that he has carefully examined and considered all plans and suggestions submitted to him for the rehabilitation of the old company, or the reinsurance of its business; that “in the opinion of your petitioner no plan of rehabilitation or offer of reinsurance has been presented which affords to the policyholders of the old company the measure and the opportunity of protection provided by that contained in the proposed Rehabilitation and Reinsurance Agreement . . . under which your petitioner proposes to rehabilitate the old company . . . Tour petitioner accordingly submits said proposed agreement," and asks approval thereof”. Petitioner asks for an order directing all interested to show cause why the proposed agreement should not be approved, and why all the prior acts of the commissioner should not be ratified, confirmed and approved. On the day this petition was filed, the court, per Willis, judge, issued its order to show cause, returnable October 19, 1936. The order prescribed in detail the nature of the notice of the hearing required to be given. Pursuant thereto, notice, in a form prescribed by the court, was posted in three designated public places in Los Angeles; published on ten consecutive days in certain prescribed newspapers in Los Angeles, San Francisco, and Sacramento; mailed to the insurance commissioner of every state in which the old company did business; and mailed to every policyholder and stockholder of the old company.
 

 On October 8, 1936, Judge Willis issued an order amending,
 
 nunc pro tunc,
 
 the orders of July 22d and August 11th, appointing the conservator. The amended order stated more fully the facts before the court at the time the original orders were made.
 

 
 *321
 
 The hearing on the order to show cause of September 25th, started October 19th and proceeded continuously to December 4, 1936. At that hearing many persons representing various interests were represented. During the hearing, and prior thereto, various persons and groups proposed plans of rehabilitation different from that proposed by the commissioner. One such plan was proposed by L. M. Giannini, who suggested the liquidation of the old company through a sale of the assets and business to him. This plan was endorsed by the insurance commissioner of the state of Washington, by two large groups of policyholders, and by various individual policyholders. Appellant Neblett suggested a plan, as did intervener Hess, and others. At the hearing full opportunity was given to all who appeared to submit evidence and argue their contentions. On December 4, 1936, Judge Willis made an order approving the plan of rehabilitation proposed by the commissioner. The order recites that this plan makes adequate provision for each class of policyholders, the creditors, and stockholders of the old company; that this plan is fair and equitable; that the plan does not discriminate unfairly or illegally in favor of any class of policyholders; that the intangible assets of the old company were worth “several million dollars”; that the approved plan is designed to preserve and conserve these intangible assets; and that if the old company were dissolved and its assets sold such assets would be of substantially less value than if sold as a part of a going concern. The court not only approved the commissioner’s plan, but also ratified, confirmed and approved all prior steps taken by him. It is from this order of December 4th that these appeals are presented. In the court below several hundred policyholders appeared in person or by counsel. Of this large number, only four have appealed. In L. A. No. 16182, the three appellants are Neblett, Bettin, and Dickinson, while in L. A. No. 16222, on the same record, the appellant is MacDonald. Appellant Neblett is the owner of a life policy in the old company, the other three appellants being owners of non-can policies in that company.
 

 The plan approved by the trial court on December 4, 1936, is an extremely detailed plan, only the essential features of which need be referred to in this opinion. Some of its features have already been mentioned. The new company had already been organized by the commissioner as his corporate
 
 *322
 
 agent with a capital of $3,000,000 provided from the assets of the old company, all the new company’s stock being held by the commissioner as conservator of the old company. As already mentioned the approved plan provided for the transfer to the new company of all of the assets of the old company with the exception of the new company’s stock and certain described claims. The new company agrees to assume without change all of the obligations of the old company under all existing policies, except non-can policies. As to these last-named policies, the new company agrees to assume all obligations thereunder at old premium rates on a reduced benefit schedule, and agrees to restore further benefits and possibly full benefits to such policyholders from certain designated sources of income of the new company. The proposal contemplates that in due course the commissioner will be appointed liquidator of the old company, and in that capacity will receive, liquidate, and pay all claims against the old company from the old company’s assets not transferred to the new company (including the new company’s stock), and from certain moneys furnished to the liquidator by the new company as provided in the agreement. The plan does not require that old company policyholders are compelled to accept the offer of the new company to assume the old company's policies. Bach policyholder is given a reasonable time to elect whether to accept or reject the offer. A dissenting policyholder is required to file a claim for damages with the liquidator of the old company and the new company agrees to pay such allowed claims in the manner and to the extent as provided in the agreement. The plan also provides that the commissioner, either as conservator or liquidator, shall continue to hold all the stock of the new company as a protection to all old company policyholders. Ultimate mutualization, in the event the policyholders so elect is also provided for. The trial court reserves jurisdiction over the entire proceeding.
 

 That, in substance is the plan approved by the lower court.
 

 Before considering the contentions of the parties in reference to the legality of the approved plan, it is first necessary to pass upon certain preliminary contentions.
 

 Respondents point out that the appeals are all from the order of December 4th and contend that the proper appeal record consists only of those pleadings and orders filed on and since September 25th, the date of the filing of the petition ultimately resulting in the order appealed from. It is ap
 
 *323
 
 parently the contention of respondents that the filing of the September 25th petition constituted the institution of a new proceeding separate and apart from any steps theretofore taken, and that if appellants desired prior orders reviewed, separate appeals should have been taken therefrom. With these contentions, we do not agree. It is true that on these appeals we are solely concerned with the validity of the order of December 4th. But it is also true that when the commissioner files a petition to be appointed conservator and asks authority to work out a rehabilitation plan, he has instituted a proceeding which is but one proceeding until the proposed plan is ultimately passed upon. The intervening orders are merely preliminary orders. Any other construction of the provisions of the Insurance Code would result in interminable delays in any proceeding thereunder, and would defeat the obvious purpose of the legislature in adopting the provisions of that code here involved. We agree with appellants that the judgment roll, and therefore the proper appeal record, starts with the petitions and orders of July 22, 1936.
 

 We also agree with appellants that all of the orders made by Judge Edmonds, including the order appointing Carpenter conservator on July 22, 1936, were void by reason of his disqualification. It is well settled that the ownership of a life insurance policy, when such ownership gives the judge an interest in the funds of the insurance company, disqualifies such judge from participating in or deciding any" cause or proceeding to which the insurance company is a party.
 
 {New York Life Ins. Co.
 
 v.
 
 Sides,
 
 46 Tex. Civ. App. 246 [101 S. W. 1163];
 
 Woodmen of the World
 
 v.
 
 Alford,
 
 206 Ala. 18 [89 So. 528];
 
 Sovereign Camp, Woodmen of the World,
 
 v.
 
 Hale,
 
 56 Tex. Civ. App. 447 [120 S. W. 539].) The rule of these cases applies with particular force to the instant case. Here the petitions filed on July 22d, disclosed on their face that the commissioner was seeking a special form of liquidation of the insurance company, and that in such proceeding there was involved a conflict of interest between life policyholders and non-can policyholders. We can see no material legal difference between ownership of a policy entitling the recipient to dividends, and ownership of stock in a corporation. Ownership of stock, according to the overwhelming weight of authority, disqualifies the judge. (48 A. L. R 617.) We are not without authority in this state.
 
 {Adams
 
 v.
 
 Minor,
 
 121 Cal. 372 [53 Pac. 815];
 
 Hall
 
 v.
 
 Su
 
 
 *324
 

 perior Court,
 
 198 Cal. 373 [245 Pac. 814];
 
 City of Vallejo
 
 v.
 
 Superior Court,
 
 199 Cal. 408 [249 Pac. 1084, 48 A. L. R. 610].) All three of these cases were decided before subdivision two of section 170 was added to the Code of Civil Procedure expressly making stock ownership a ground of disqualification, and were decided under the general “interest" provisions of that section. It therefore follows that by reason of his ownership of the life policy in the old company, all orders made by Judge Edmonds were void. This holding, however, contrary to the contentions of appellants, in no way affects the validity of any of the subsequent proceedings. The validity of the subsequent proceedings is not dependent on the validity of any order made by Judge Edmonds. The subsequent proceedings before Judge Willis stand by themselves independently of the prior orders. In fact, the holding that all of the orders made by Judge Edmonds were void, does not even constitute a holding, that the taking possession of the assets of the old company by Carpenter on July 22d without a prior valid court order, was unlawful. Not only were all the acts performed by Carpenter, including the taking possession of the assets of the old company, and the organization of the new company, after a full hearing ratified, confirmed and approved by the valid orders of August 11th and of December 4th, but also the Insurance Code confers the right on the commissioner to take possession of the assets of an insolvent insurance company without a prior court order. Section 1013 of that code confers on the commissioner, whenever it shall appear to him that any insurance company is in such condition that its further transaction of business will be hazardous to its policyholders or creditors, the power to take summary possession “without notice, and before applying to the court for any order". Similar provisions for summary seizure exist in the Bank Act and Building and Loan Act. These sections have uniformly been sustained against the claim of illegal seizure.
 
 (State Savings etc. Bank
 
 v.
 
 Anderson,
 
 165 Cal. 437 [132 Pac. 755, L. E. A. 1915E, 675] ;
 
 North American Building etc. Assn.
 
 v.
 
 Richardson,
 
 6 Cal. (2d) 90 [56 Pac. (2d) 1221].) The petition for appointment as conservator, containing proper allegations, was filed July 22d. On that date, Carpenter took possession of the assets of the company. This he could lawfully do without court order. He thereupon organized a new company with a name similar to that of the
 
 *325
 
 old company as a corporate agent to assist him in carrying on the business of the old company. This is alleged in the petition of September 25th, and we must assume that such allegation was supported by evidence. That Carpenter acted advis.edly in forming the new corporation is amply demonstrated, when the nature of the problem facing him is considered. He was in possession of the assets and business of a company that was doing business not only in California, but also in many other states. These assets totalled over $200,000,000. The company was technically insolvent as that term is defined in the Insurance Code, but by no means bankrupt. The old company possessed an agency organization, good will, and a going concern value which the court holds was worth several millions of dollars. The moment Carpenter took possession of the company its right to do business in this and other states ceased. Obviously if this cessation of business continued for any appreciable period the intangible assets already mentioned would have been irreparably lost to the injury of all concerned. It was obvious to him that these assets could be salvaged if the business of the old company could be continued during the rehabilitation period. Paced with this emergency, he formed the new company and purchased all of its stock with assets of the old company, to carry on such business during that period. He did this after first filing a petition setting forth in full the reasons for his proposed action. It is true that he also secured an order of court approving such proposed action, and it is also true that such approval was unavailing, the order being void. But as soon as the fact that the order was void was discovered, on August 11th, he secured a new order appointing him conservator, and approving everything he had done in connection with the formation of the new company. We must assume that the court below thoroughly investigated this phase of the situation, and found the acts were reasonably necessary. We find no irregularity or illegality in this phase of the transaction.
 

 Turning now, directly, to a consideration of the validity of the order of December 4th, it is appellants’ main contention that such order must be reversed for the reason that the judgment roll discloses that it was not preceded by findings of fact and conclusions of law. It is the theory of appellants that the proceeding here involved is an ordinary civil action and therefore governed by the provisions of sections
 
 *326
 
 632 and 633 of the Code of Civil Procedure. Predicated on this basic premise, appellants rely on the rule that the requirement of findings in these sections is mandatory, and that failure to make them constitutes prejudicial and reversible error. This is undoubtedly the law, if such findings are necessary and have not been waived.
 
 (Estate of Pendell,
 
 216 Cal. 384 [14 Pac. (2d) 506];
 
 Williams
 
 v.
 
 Wren,
 
 88 Cal. App. 607 [263 Pac. 1038];
 
 Frascona
 
 v.
 
 Los Angeles Ry. Corp.,
 
 48 Cal. App. 135 [191 Pac. 968].)
 

 Assuming that findings were required in the present proceedings, a point later to be discussed, and assuming without deciding that the many recitals in the order are not sufficient to constitute findings (but see
 
 Petition of Los Angeles Trust Co.,
 
 158 Cal. 603 [112 Pac. 56]), we are nevertheless of the opinion that appellants have not presented a proper case where the rule above discussed is applicable. These appeals have been taken on the judgment roll. The properly authenticated record does not disclose that findings were not waived. From an early date it has been held in this state that on a judgment roll appeal the mere nonappearance of findings where required by statute does not necessarily establish error. The statutes requiring findings recognize that this requirement may be waived. (See sec. 634, Code Civ. Proc.) Error is never presumed, but must be affirmatively shown. Where findings do not appear, and are required on a judgment roll appeal it will be conclusively presumed, in the absence of a proper record showing the contrary, in support of the judgment, that such requirement was waived.
 
 (Mulcahy
 
 v.
 
 Glazier,
 
 51 Cal. 626;
 
 Gushing-Wetmore Co.
 
 v.
 
 Gray,
 
 152 Cal. 118 [92 Pac. 70, 125 Am. St. Rep. 47].)
 

 Appellants, while recognizing the existence of this rule, contend that the record discloses that findings were demanded and refused, and exceptions noted. To support this contention they refer to a purported colloquy between certain counsel appearing below and the trial judge following the oral opinion of the trial judge. The purported oral opinion and conversation are printed at the end of the last volume of the transcript. An examination of the transcript discloses that the comments referred to are not properly made part of the appeal record. The purported comments are not certified, appearing in the transcript after the formal certification by the clerk. This portion of the purported record is not authenticated nor certified in any way. Ap
 
 *327
 
 pellants seek to remedy this defect by the affidavit of the attorney appearing for appellant Neblett in the court below, attached to appellants’ reply brief, to the effect that the trial court’s opinion and conversation were copied from a certified copy of the court reporter’s transcript. Obviously the defect in the record cannot be cured in that fashion. Assuming that the portion of the purported transcript referred to is capable of the interpretation that the trial court refused to make findings, and that appellants did not waive them, this court cannot properly consider that portion of the purported record. It therefore follows that it must be conclusively presumed in support of the judgment, that findings were waived.
 

 Another complete answer to the present contention is that the proceeding here involved is a special proceeding in which findings are not required. Section 22 of the Code of Civil Procedure defines an “action” as “an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense”. Section 23 provides that “every other remedy is a special proceeding”. Under these definitions the proceedings here involved are obviously special proceedings. The commissioner was not prosecuting an action “for the enforcement or protection of a right”, or for the “redress or prevention of a wrong”, or for the “punishment of a public offense”. The proceeding was had under sections 1010 to 1061 of the Insurance Code which specially deal with the rehabilitation and liquidation of insurance companies. Those sections set up a comprehensive statutory scheme to accomplish those results. The proceeding is not one in which another party is prosecuting another party at all. It is simply a proceeding in which the state is invoking its power over a corporate entity permitted by the state to engage in a business vitally affected with the public interest upon condition of continuing compliance with the requirements provided by the state. It is not a controversy between private parties but a proceeding by the state in the interest of the public.
 

 Once it is determined that the proceeding is a special proceeding, it follows that since the provisions of the Insurance Code in question do not require findings, none are required by sections 632 and 633 of the Code of Civil Procedure. Findings are required and necessary only where a statute so
 
 *328
 
 provides.
 
 (Matter of Danford,
 
 157 Cal. 425 [108 Pac. 322].) Sections 632 and 633 of the Code of Civil Procedure are found in part II of that code which deals with “Civil Actions”. By virtue of those sections -findings are required, unless waived, in all civil actions. But those sections have no application to special proceedings, some of which are covered in part III of the code. As to special proceedings, findings are only required when the statute so requires. As to many special proceedings findings are required either by direct provision, or indirectly, by reason the statutes dealing therewith incorporating that portion of part II of the code that includes sections 632 and 633. Thus, to give but one example, findings are required in probate proceedings by virtue of section 1230 of the Probate Code, formerly sections 1716 and 1717 of the Code of Civil Procedure. However, when the statute dealing with a particular special proceeding is silent as to the requirement of findings, none is required. Thus in a proceeding for change of name findings are not required.
 
 (.Petition of Los Angeles Trust Co.,
 
 158 Cal. 603 [112 Pac. 56].) One of the leading cases is
 
 Matter of Danford, supra,
 
 where it was held that since the sections of the Code of Civil Procedure dealing with the procedure to be followed in disbarment proceedings did not directly or indirectly provide for findings, none were required. A reading of the provisions of the Insurance Code here involved demonstrates that there is neither a direct requirement of findings nor are sections 632 and 633 of the Code of Civil Procedure incorporated by reference. It therefore follows that in the present special proceeding findings are not required.
 

 As already stated, the proceedings here under review were taken under sections 1010 to 1061 of the Insurance Code, adopted in 1935. While many of the provisions of that code were merely reenactments of existing law, several of the provisions contained therein in reference to the rehabilitation of insolvent insurance companies were new sections in this state, having been copied, substantially, from similar provisions in the New York insurance law. (Cahill’s Consol. Laws of New York, 1931-1935 Supp., chap. 30, p. 320.) In the court below many of those attacking the commissioner’s plan, including several of the appellants, contended that the provisions of the Insurance Code dealing with rehabilitation of insolvent insurance companies were unconstitutional in that they violated the due process, equal protection of the law,
 
 *329
 
 and the contract clauses of the federal Constitution. On the oral argument appellant Neblett conceded, for himself at least, that the provisions in the code arc valid and constitutional, but contended, as do several of the other appellants, that the plan and procedure approved by the court below are violative of the federal Constitution. The two phases of the problem are interrelated, and will be considered together.
 

 It seems to be the view of several of the appellants that if the Insurance Code permits the reorganizing of an insolvent company by the organizing of a new company, instead of requiring outright liquidation, the sections are invalid. It is also argued that the approved plan is invalid in that it unfairly and unlawfully discriminates between life policyholders and non-can policyholders. These contentions are without merit. It is no longer open to question that the business of insurance is affected with a public interest. The state has an important and vital interest in the liquidation or reorganization of such a business.
 
 (Mitchell
 
 v.
 
 Taylor,
 
 3 Cal. (2d) 217 [43 Pac. (2d) 803];
 
 German Alliance Ins. Co.
 
 v.
 
 Lewis,
 
 233 U. S. 389 [34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189].) Neither the company nor a policyholder has the inviolate rights that characterize private contracts. The contract of the policyholder is subject to the reasonable exercise of the state’s police power. The only restriction on the exercise of this power is that the state’s action shall be reasonably related to the public interest and shall not be arbitrary or improperly discriminatory. Sections 1010 et seq. of the Insurance Code deal with rehabilitation and liquidation of insurance companies in financial difficulties, and with the reinsurance of their business. This phase of state control is extremely important. Insurance is a public asset, a basis of credit, and a vital factor in business activity. Obviously, if an insurance company gets into financial difficulties, something must be done to remedy the situation. Either the company must be liquidated, and its assets distributed to its creditors, thus immeasurably injuring many of its policyholders who are thus deprived of insurance protection, or the business must, if possible, be rehabilitated. The public has a grave and important interest in preserving the business if that is possible. Liquidation is the last resort.
 
 (National Surety Corp.
 
 v.
 
 Nantz,
 
 262 Ky. 413 [90 S. W. (2d) 385];
 
 In re Globe & Rutgers Fire Ins. Co.,
 
 148 Misc. 497 [266 N. Y. Supp.
 
 29];
 
 
 *330
 

 In re Bond & Mortgage Guarantee Co.,
 
 157 Misc. 240 [283 N. Y. Supp. 623].) The provisions of the California Insurance Code recognize the public interest involved and provide for rehabilitation of such companies, if possible. Section 1011 provides for the filing by the commissioner of a petition for appointment as conservator whenever, among other things, it is disclosed after examination that the company is in such a condition that its further transaction of business would be hazardous to its policyholders, or creditors, or to the public; that when the commissioner files a verified petition, as was done here, together with a copy of the last report of examination showing the company is insolvent, ilie trial court shall issue its order vesting the commissioner with title to all the assets of the company and directing the commissioner as such conservator to conduct the business. Section 1012 provides that the order above mentioned shall remain in force until it shall appear to the court that the company can properly resume the conduct of its business. Section 1013, already discussed, gives the commissioner power of summary seizure without notice or prior court order. Section 1015 requires the commissioner immediately after a summary seizure to institute proceedings under section 1011. Section 1016 provides that if after his appointment as conservator, it shall appear to the commissioner that further efforts to proceed under section 1011
 
 “ivoulcl be futile”
 
 he may apply for an order to liquidate the company. Section 1020 confers on the court power to issue certain restraining orders in connection with granting orders under sections 1011 or 1016. The sections immediately following provide for the procedure to be followed in handling and disposing of claims in the liquidation proceedings. Section 1035 confers on the commissioner power to employ special deputy commissioners, clerks and assistants and to give to each of them such power as may by him be deemed necessary”. Section 1037 defines the wide powers conferred on the commissioner as conservator or liquidator. Section 1043 confers on the commissioner, either “as conservator or as liquidator”, subject to the approval of the court the power to “mutualize or reinsure the business”, of the company or to “enter into rehabilitation agreements”. Section 1057 makes the commissioner in all proceedings under the provisions of the code, the trustee for the benefit of all creditors and other interested parties.
 

 
 *331
 
 Under the statutory plan thus embodied in the Insurance Code, the state, acting under and within its police power, has provided that the commissioner, when an insurance company is in financial difficulties, shall first be appointed by the court as conservator. As such, it is his duty to operate the company and to try to remove the causes leading to its difficulties. If this cannot be done, then he must attempt to rehabilitate the business of the company as conservator or liquidator, by entering into, with court approval, either reinsuring or rehabilitation agreements. Only if this cannot be done and further efforts “would be futile” should liquidation be resorted to.
 

 In the present case the merits of the legislative policy of rehabilitation if possible instead of liquidation is well illustrated. The old company has been doing business in California since 1868. At the time the commissioner petitioned to be appointed conservator the old company was doing business in 43 states and in the District of Columbia. As of December 31, 1935, it had life insurance in force of over $600,000,000. It had about 300,000 policyholders. Its assets were in excess of $200,000,000. Its life insurance business was on a sound basis and very profitable. Its difficulties were caused almost entirely by reason of inadequate reserves behind its non-can policies, which was caused by inadequate premium rates based on actuarial under-calculations. The convention examination disclosed that the old company was fundamentally sound, and that all its reserves were unimpaired, except those pertaining to the non-can policies, as to which there was a deficiency of approximately $23,000,000. The company had intangible assets consisting of good will, going concern value, and an extensive agency organization worth several millions of dollars. All these intangible assets would be lost if the old company were liquidated. The old company was powerless to change the existing non-can policies. The contract and due process clauses prohibited the company from making any changes therein. But these prohibitions do not apply to the state acting under its police powers. Obviously, if the agency organization were to be preserved pending court approval of a rehabilitation plan, the business of the old companj' had to be continued. Faced with these facts the commissioner determined to organize a new company to continue the business pending the approval of a rehabilitation plan. All these steps, after a.full hear
 
 *332
 
 ing, were later approved by the court. Under the rehabilitation agreement, approved by the trial court, the new company takes over substantially all of the assets of the old company, with the exception of the new company’s stock, assumes as to consenting policyholders all policies of the old company, reduced as to non-can policyholders as provided in the agreement, and assumes as therein provided, the liabilities of the old company.
 

 This method of rehabilitation by the formation of a new company is obviously contemplated by the Insurance Code. A similar plan for the rehabilitation of National Surety Company has been sustained by various courts in a similar proceeding under the New York law upon which the California law is modeled. The superintendent of insurance of New York found the National Surety Company, a New York corporation, to be insolvent. That company, like the old company here, was engaged in a nation-wide business of great magnitude, and the company had a good will of great value. As statutory rehabilitator he proposed a plan, approved by the court, to conserve the assets by organizing a new company—the National Surety Corporation—with a capital of $1,000,000 and a surplus of $3,000,000 paid in from the assets of the old company in exchange for all of the stock of the new company, which was to be held by the commissioner for the protection of all concerned. The new company was to assume a portion of the liabilities of the old, and the new company was to receive all the liquid and most desirable assets of the old. A second corporation was organized to liquidate certain mortgage securities of the old company out of certain assets transferred to it. A third corporation was organized to receive certain frozen assets of the old company, and .to pay therefrom certain obligations not assumed by the other two new corporations. The plan was attacked on the ground it was beyond the power of the commissioner and was unconstitutionally discriminatory. Among other things it was held that the legislature had the power to permit rehabilitation instead of liquidation and that in working out a plan of rehabilitation a new corporation could be formed to receive the assets of the old in order to save the profitable business and good will of the old company. The New York court upheld the plan against several objections here made by appellants.
 
 (Application of People Toy Van Schaick,
 
 239 App. Div. 490 [268 N. Y. Supp. 88].) The New York court
 
 *333
 
 of appeals in
 
 People by Van Schaick
 
 v.
 
 National Surety Co.,
 
 264 N. Y. 473 [191 N. E. 521], affirmed the Supreme Court, Appellate Division, on the authority of
 
 Matter of People (Title & Mortgage Guarantee Co. of Buffalo),
 
 264 N. Y. 69 [190 N. E. 153, 96 A. L. R 297]. In this last-entitled case many of the provisions of the Insurance Code of New York dealing with rehabilitation were upheld.
 

 The National Surety Company rehabilitation plan was later subjected to attack in Kentucky. The courts of that state likewise upheld the rehabilitation, emphasizing the importance to all concerned of preserving the good will of the old company and of rehabilitation in place of liquidation. The Kentucky court upheld the plan against the contention of a creditor of the old company who claimed discrimination in that his debt was not assumed in full.
 
 (National Surety Corp.
 
 v.
 
 Nantz,
 
 262 Ky. 413 [90 S. W. (2d) 385].)
 

 The legality of the plan was likewise attacked in the federal courts of South Carolina. In that action it was contended, as appellant Neblett contends here, that the plan of rehabilitation amounted to a fraudulent transaction whereby the new corporation took the valuable assets of the old corporation, the latter company by this maneuver seeking to evade its liabilities. It was contended that equity should annul the fraud. The court held that the transfer to the new company of the desirable assets of the old was in the ultimate interests of all creditors, and that thereby valuable intangible assets were saved that by liquidation would have been lost. The plan was again upheld and approved.
 
 (Thrower
 
 v.
 
 Kistler,
 
 14 Fed. Supp. 217.)
 

 In several other cases the courts have approved plans for rehabilitation of companies in which a new company was organized to carry on the business of the old.
 
 (In re Bond & Mortgage Guarantee Co.,
 
 157 Misc. 240 [283 N. Y. Supp. 623];
 
 In re New York Title & Mortgage Co.,
 
 156 Misc. 186 [281 N. Y. Supp. 715];
 
 In re Rehabilitation of Lawyers Mortgage Co.,
 
 148 Misc. 579 [287 N. Y. Supp.
 
 625]; Gauss
 
 v.
 
 Central West Casualty Co.,
 
 266 Mich. 159 [253 N. W. 252].)
 

 In the face of these many well-reasoned eases, appellants contend that the Insurance Code does not permit the rehabilitation of an insolvent company by "the organization of a new company. Specifically it is contended that the code merely permits rehabilitation agreements and the reinsuring of an insolvent company’s business. It is urged that the
 
 *334
 
 plan as approved, calling as it does for a transfer of assets to a new company, is neither a rehabilitation agreement, nor a reinsurance of the old company’s business. The plan as approved is called by appellants a “reorganization” of the old company, and it is urged that a reorganization is not included within the meaning of rehabilitation; that the term, “rehabilitation” necessarily implies the continuance of the old company as a going concern. The New York cases are attempted to be distinguished on the ground that section 52 of the New York law expressly permits reorganization of insurance companies, and that no similar provision exists in California. These points are without merit. An examination of the New York eases definitely discloses that they were decided under the rehabilitation sections of the New York law, and not under section 52. It is to be noted that under section 1043 of the California Insurance Code the legislature was careful to provide for the rehabilitation and reinsuring of the “business” of an insolvent company. The legislature provided for the rehabilitation of the business of the old company—not of the company itself. The code when read as a whole discloses a clear and unequivocal intent to preserve whenever possible the “business” of the insolvent company, and if to preserve such business—if to rehabilitate such business—a new corporation must be organized, the power clearly exists.
 

 Equally untenable is the argument that the plan as approved does not call for the “reinsurance” of the business of the old company. Appellants contend that the term ‘ ‘ reinsurance” has but one meaning—one company reinsuring the risks of another company, the latter company still remaining liable on the original risk. Reference is made to section 620 of the Insurance Code containing such a definition. But the term has likewise another well recognized meaning—that is, a contract by which one company (the new company here) takes over the insurance risks of another company (the old company here) and becomes substituted as insurer in the place and stead' of the original insurer. (33 Cor. Jur. 58, sec. 736;
 
 People
 
 v.
 
 American Cent. Ins. Co.,
 
 179 Mich. 371 [146 N. W. 235].) Inasmuch as section 1043 of the Insurance Code confers the right of reinsuring in event of liquidation, obviously the term as used in that section was not intended to be limited solely to its indemnification meaning, but also includes the broader meaning above discussed.
 

 
 *335
 
 Appellants attack the plan as being unlawfully discriminatory, in that life policyholders are taken into the plan on more liberal terms than non-can policyholders. In the first place it is to be noted that every policyholder is given his election to accept or reject the plan. Every policyholder who consents to the plan clearly enters into a novation with the new company. Having done so, such consenter cannot complain that he has been unfairly treated.
 
 (Mulcahy
 
 v.
 
 Baldwin,
 
 216 Cal. 517 [15 Pac. (2d) 738].) As to the dissenter to the plan, it is clear that he has no legal cause for complaint simply because the commissioner determined to rehabilitate rather than liquidate. The United States Supreme Court has unequivocally determined that a creditor or policyholder has no vested right in liquidation in event of insolvency. There is no property right, in the constitutional sense, in any form of remedy.
 
 (Doty
 
 v.
 
 Love,
 
 295 U. S. 64 [55 Sup. Ct. 558, 79 L. Ed. 1303, 96 A. L. It. 1438];
 
 Gibbes
 
 v.
 
 Zimmerman,
 
 290 U. S. 326 [54 Sup. Ct. 140, 78 L. Ed. 342]; see, also,
 
 Daniel
 
 v.
 
 Layton,
 
 75 Fed. (2d) 135.) All that the law requires as to a dissenter is that he receive the liquidated value of his contract rights without unreasonable delay—he has no vested right to immediate payment. In
 
 Doty
 
 v.
 
 Love, supra,
 
 page 71, the United States Supreme Court in reference to a bank reorganization stated:
 

 “The argument is made that some of the assets of the old bank are placed at the risk of the business of the new one. . . . The finding is that collections are made more promptly and readily by a going concern than by one in liquidation . . . Adequate precautions are embodied in the plan to assure the enjoyment of these benefits by the creditors and not by others. It is one of the terms of the decree that none of the profits of the business may be used for the new shareholders until every dollar’s worth of assets turned over by the Superintendent has been paid to the creditors or delivered to the pool.”
 

 All the dissenter is entitled to is the equivalent of what he would receive on liquidation. Appellant Bettin urges that his remedy against the old company is ineffective because that company has conveyed all its assets of value to the new company. The record shows the contrary. It discloses that as trustee for all creditors of the old company, including dissenters, the commissioner holds all of the stock of the new company, the agreement of the new company to
 
 *336
 
 pay him certain sums equivalent to the reserves established on policies whose owners dissent, and the agreement of the new company to pay over to him for the benefit of all creditors of the old company portions of its future earnings. There is nothing in the judgment roll to indicate the_ value of these assets. The record is also silent as to what the policyholders would have received in liquidation. All that the judgment roll discloses is that under the approved plan the assets are far in excess of what they would be on liquidation. On these appeals, without the evidence before us, in support of the judgment, we must assume that evidence was introduced on these vital points, and that such evidence demonstrated that dissenters under the plan will receive as much, or more, as they would have received on liquidation. The order appealed from contains a recital that adequate provision is made in the plan for each class of policyholder. We must assume that such recital was amply supported by evidence.
 

 It is true that the approved plan treats consenting life policyholders differently from consenting non-can policyholders, but if they dissent they are treated the same—they are allowed and will be paid the amount allowed by law as the measure of damages from the assets of the old company above enumerated.
 

 Moreover, the record demonstrates that under the circumstances here existing the difference in treatment was justified. The life policyholders, and the commercial health and accident policyholders were paying adequate premiums for their insurance and these phases of the old company’s business were highly profitable. The non-can policyholders were not paying adequate premiums, and this fact was the primary cause of the difficulties of the old company. The non-can policies were draining the old company to disaster. If any plan of rehabilitation was to succeed it was imperative that the integrity of the life business be preserved in order to earn profits for the benefit of all concerned, including the non-can policyholders. Continued profits from the life business, and from the profitable accident and health business, furnished the only sources from which full contract benefits to non-can policyholders could ever be resumed. Under the plan 10 per cent of the net earnings of participating life policies, nearly all the net earnings of the nonparticipating life policies, and nearly all the net earnings of the commercial accident and
 
 *337
 
 health policies are made available for the ultimate restoration of full benefits to non-can consenters, and for full payment of all claims of non-can dissenters. It is quite clear that since the old company was insolvent, the new company could not assume all the liabilities of the old company or it too would be insolvent. Appellants urge, however, that the reduction in assumption should have been equalized. None of the evidence produced over a six weeks’ period is before us. The evidence might well have shown, and the conclusion seems to us quite a logical one, that if life policies were reduced so as to be equalized with the non-can policies, such reduction would dangerously impair the possibility of writing new life insurance which would ultimately disorganize and destroy the agency organization. The evidence might well have shown (and probably did) that such reduction in life policies would cause lapses and surrenders in such policies, particularly of those still insurable in other companies, leaving only undesirable risks accepting the reduction. If the evidence showed these facts it might well be that the evidence also showed that equalization would produce less for the non-can policyholders than the plan adopted. In other words, the difference in treatment can be justified on the theory that such difference was necessary not only to preserve life policyholders’ rights, but also the rights of non-can policyholders. Other grounds for the difference in treatment readily occur to us. Under such circumstances we must assume that the holding of the trial court that the plan does not unfairly discriminate was supported by the evidence.
 

 Appellants Neblett and MacDonald next argue that the approved agreement permits a fraudulent conveyance in violation of sections 3439 and 3442 of the Civil Code. Under the first section “every transfer of property . . . and every judicial proceeding taken, with intent to delay or defraud, any creditor or other person of his demands, is void against all creditors of the debtor. ...” Section 3442 provides that generally “the question of fraudulent intent is one of fact and not of law; . . . provided, however, that any transfer or incumbrance of property, made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors.” The sections, obviously, have no application to the proceedings here involved. We are not here presented with a case where an insolvent indi
 
 *338
 
 vidual or corporation by private contract conveys away his or its assets with intent to defraud creditors. Here the transfer was made pursuant to a valid statute after court approval.' Clearly there can exist no intent to defraud when the transfer is made under the terms of a valid statute and pursuant to a court order. The old company did not convey its assets to the new company while insolvent. The commissioner, as already held, validly took possession of the assets of the old company on July 22, 1936. On August 11, 1936, he was validly appointed conservator, his prior acts approved, and his title to the assets expressly confirmed. By operation of law, pursuant to the express terms of the statute, title to all of the assets of the old company became legally vested in the commissioner as trustee for all creditors. The transfer of these assets from the commissioner to the new company occurred pursuant to statutory authority and order of court.
 

 These two appellants strongly rely on
 
 Shapiro
 
 v.
 
 Wilgus,
 
 287 U. S. 348 [53 Sup. Ct. 142, 77 L. Ed. 355, 85 A. L. R. 128]. The case merely serves to emphasize the distinction here involved. In that case there was involved a conveyance of his assets by a harassed individual to a corporation for the purpose of obstructing his creditors. It was conceded that the conveyance was made to hinder and delay his creditors. In the present case the conveyance was made after a full court hearing, by court approval and order, pursuant to the terms of a valid statute. The conveyance to the new company was not made by the insolvent debtor, but by the commissioner, a state official, and was made, as held by the court, for the purpose of preserving and protecting the rights of creditors. All of the cases cited by appellants relate to private transactions, and are not in point.
 

 Appellant MacDonald contends that the conveyance to the new company was void because Carpenter was not validly appointed liquidator before making the conveyance. It will be remembered that Judge Willis appointed Carpenter conservator on August 11th, but did not appoint him liquidator. The argument of appellant MacDonald is predicated on the contention that to rehabilitate a company the commissioner must first be appointed liquidator under section 1016 of the Insurance Code. That section has nothing to do with the power to rehabilitate. That is expressly covered by section 1043 providing that “the commissioner, as
 
 con
 
 
 *339
 

 servator
 
 or liquidator ’ may, with court approval, enter into rehabilitation agreements.
 

 Appellants next urge that the order of December 4th is void because the commissioner did not secure a valid permit for the issuance of the stock of the new company. It is contended that under sections 820-860 of the Insurance Code an insurance company must secure from the commissioner a permit to issue stock. It is stated that the commissioner at no time secured a permit from himself as commissioner to himself as conservator, but that the only permit secured was from himself to himself as liquidator. To support this contention one of the appellants attaches to his brief what purports to be a permit from himself as commissioner to himself as liquidator, authorizing the new company issue, and states, without reference to the record, that this was the only permit issued or secured. To state the contention is to answer it. The law does not require idle acts. We doubt whether the provisions of the Insurance Code requiring the securing of a permit from the commissioner for the issuance of stock apply to the commissioner himself, where court approval of the issuance is contemplated and secured. In the second place the record does not support appellants’ contention. The record does not disclose that the permit set forth in the brief was actually issued, nor that that permit was the only one secured. If appellants desired to raise this point it was their duty to present a proper record to this court. They have elected to appeal on the judgment roll. All intendments are in support of the order appealed from. If a permit from the commissioner to himself as conservator was required, in support of the order, we must conclusively presume that such permit was secured.
 

 Appellants MacDonald and Neblett urge that section 1043 of the Insurance Code, and the plan as approved, are violative of section 13 of article XII of the state Constitution which provides: “The state shall not, in any manner, loan its credit, nor shall it subscribe to or be interested in the stock of any company, association, or corporation.” Relying on
 
 Mitchell
 
 v.
 
 Taylor,
 
 3 Cal. (2d) 217 [43 Pac. (2d) 803], where it was held that the insurance commissioner in taking charge of insolvent companies is a state officer acting on behalf of the state, it is contended that since the commissioner as conservator has subscribed to all of the stock of the new company, the state has so subscribed and the Constitution
 
 *340
 
 violated. Of course the insurance commissioner is a state officer, and of course the state has an interest in rehabilitating insolvent insurance companies, but that interest is not a vested interest as is contemplated by the above constitutional provision. Section 1057 of the Insurance Code, above referred to, expressly provides that in all proceedings thereunder the commissioner acts as trustee for the benefit of all of the creditors of the insolvent company. It is quite clear that the commissioner by subscribing to the stock of the new company has not loaned the credit of the state to the new company. Not a penny of state money has gone into the treasury of the new company. No liability under the agreement is imposed on the conservator either in his official or personal capacity. There was no loan of credit at all. The commissioner acting pursuant to a statute, with court approval, took certain assets of the old company and transferred them to the new company in exchange for the stock which he holds as trustee for the benefit of the creditors of the old company. Obviously, the commissioner as a state officer did not subscribe to the stock of the new company so as to make the state a stockholder. The point is without merit.
 

 Equally untenable is appellant Neblett’s contention that the use of the word, “mutual” in the name of the new company is misleading, illegal and fraudulent, in that the company is not a “mutual” company. It is to be noted that the challenged term has been in the old company’s name since its incorporation in 1868. The new name was obviously chosen by the commissioner so as to conserve, so far as possible, the value of the old name. The record does disclose that the old company and the new company are stock companies, but it is also disclosed that the new company (as was the old company) is authorized to issue participating life policies as well as nonpartieipating policies. The record also shows that the approved plan provides for the ultimate mutualization of the company on certain designated conditions. Whether these facts justify the use of the term, “mutual” in the new company’s name was a question for the consideration of the trial court.
 

 Some reference is made in the briefs and in the judgment roll to other plans of rehabilitation submitted to the trial court. The evidence as to the relative merits of the various plans is not before us. The record shows that the commissioner and the trial court studied and gave considera
 
 *341
 
 tion to all proposed plans and found the one here approved to be the one best fitted to protect and preserve the rights of all concerned. Obviously, this court, without any evidence before it, cannot now determine the relative merits of any of the submitted plans.
 

 We have considered all of appellants’ contentions. Prom a careful examination of the record before us, we are satisfied that the order of the trial court appealed from should be affirmed.
 

 The motion to strike appellant Neblett’s opening brief from the files is denied; the order appealed from is affirmed.
 

 Chief Justice Waste and Justice Edmonds being disqualified did not participate in the decision.
 

 Rehearing denied.
 

 Seawell, J., voted for a rehearing.
 

 Waste, C. J., and Edmonds, J., did not participate in the consideration of the petition for rehearing.