[No. B109505. Second Dist., Div. One. Mar. 26, 1998.]

CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Plaintiff and Respondent, v.
MISSION INSURANCE COMPANY, Defendant;
MARK BOOZELL, as Insurance Director, etc., et al., Claimants and Appellants;
INSURANCE GUARANTY ASSOCIATIONS, Interveners and Respondents.

**COUNSEL**

Debra J. Hall, Munger, Tolles & Olson, Joseph D. Lee, Rachel M. Capoccia, Debevoise & Plimpton, Donald Francis Donovan, Carl Micarelli, Sidley & Austin, James M. Harris, Thomas E. Patterson, Robert A. Holland, James R.

Stinson, William M. Sneed, Rudnick & Wolfe, Stephen W. Schwab, Elizabeth A. Graber, Pachulski, Stang, Ziehl & Young, Iain A. W. Nasatir, Katten, Muchin & Zavis, Stuart M. Richter, Raymond Wu, Clay A. Tillack, Ronald S. Betman, Mendes & Mount and Mark S. Facer for Claimants and Appellants.

William W. Palmer, Rubinstein & Perry, Karl L. Rubinstein, Dana Carli Brooks and Melissa S. Kooistra for Plaintiff and Respondent.

Lord, Bissell & Brook, Thomas W. Jenkins, C. Guerry Collins, Rowe W. Snider and Charissa Dorian for Interveners and Respondents.

## OPINION

**ORTEGA, J.**—This is the second appeal involving Insurance Commissioner Charles Quackenbush's proposed liquidation plans for Mission Insurance Company, an insolvent insurer whose termination the Commissioner is managing.[1] "Mission both bought and sold reinsurance, in which the reinsured contracted with other insurance companies to exchange some of its policyholders' premiums for indemnity against covered losses incurred by its insureds. The relevant policies provided property and casualty liability coverage if specified events occurred, as opposed to life or disability coverage. Many of the policies had 'long tails,' which meant that a coverage claim from the original policyholder to its insurer, for which the original insurer would seek reimbursement from its reinsurer, such as for environmental pollution, could occur long after the triggering event (the actual dumping of pollutants, for example) and expiration of the policy. These potential, but not yet filed, coverage claims, liability for and the amount of which are unknown, are called *incurred but not reported* (IBNR) losses." (*Quackenbush* v. *Mission Ins. Co.* (1996) 46 Cal.App.4th 458, 460 [54 Cal.Rptr.2d 112] (hereafter *Mission I*).)

In our earlier opinion, we invalidated a portion of the Commissioner's first liquidation plan which permitted him to estimate future incurred but not reported (IBNR) losses and to require Mission's reinsurers to pay those estimated amounts into the insolvent estate as part of the final marshaling of its assets for pro rata distribution to claimants, although liability for such claims, and their amounts, had yet to be determined. We held that portion of the plan violated Insurance Code section 1025.[2] We agreed with Mission's reinsurers that section 1025 prohibits future IBNR loss estimates. We also

---

[1] Unless otherwise noted, references to "the Commissioner" refer to the California Insurance Commissioner.

[2] Unless otherwise noted, all further section references are to the Insurance Code.

agreed that section 1025 prohibits current payment of such estimated losses into an insolvent insurer's estate for immediate distribution to creditors. Rather, Mission's reinsurers' liability for, and the exact amount of, future IBNR losses must await resolution of those issues. We remanded the case to the trial court and ordered the Commissioner to submit a new plan which complied with section 1025. (*Mission I, supra,* 46 Cal.App.4th at pp. 465-468.)

The Commissioner submitted and the trial court approved, over objections, an amended plan. Unlike the original plan, the amended plan expressly prohibits the Commissioner from requiring payment of IBNR amounts from reinsurers until their liability for, and the amounts of, such losses are determined. The amended plan also compels the Commissioner to notify the reinsurers of his intent to fix liability for and the amount of IBNR claims so they may lodge objections, as required by section 922.2.

Some of Mission's reinsurers and other interested parties again appeal, raising many of the same challenges they brought to the original plan.[3] Primarily, they argue that, despite these differences in the amended plan, it violates sections 1025 and 922.2 by impliedly permitting estimation and forced payment of IBNR claims before liability for and the amount of such claims are determined, and failing to provide adequate notice to permit the reinsurers to challenge IBNR claim determinations. We reject these claims and affirm the trial court's approval of the amended plan.

### ·BACKGROUND

Our earlier opinion summarized the factual and legal background leading to Mission's insolvency, the Commissioner's statutorily authorized takeover and management of Mission's termination, the role and interests of Mission's reinsurers, and the Commissioner's original plan for Mission's liquidation. Much of that discussion is equally relevant to our analysis of the amended plan. (*Mission I, supra,* 46 Cal.App.4th at pp. 461-465.)

Section 1025 prohibits claimants with potential future IBNR claims from sharing in distribution from an insolvent insurer's estate until liability for

---

[3]An order approving a final plan for an insolvent insurer is appealable. (Code Civ. Proc., § 904.1 subd. (à)(1); *Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 322-323 [74 P.2d 761].) The appellants are the Illinois Insurance Director, who is managing the insolvency of Centaur Insurance Company, an Illinois reinsurer of Mission; the Reinsurance Association of America (RAA), a nonprofit reinsurers' trade association, some of whose members are Mission reinsurers; Borg-Warner Corporation, Centaur's parent company; and Certain Underwriters at Lloyd's, London and CNA International Reinsurance Company, Ltd., additional Mission reinsurers.

and the amount of the claims becomes certain: *"Claims founded upon unliquidated or undetermined demands* must be filed within the time limit provided in this article for the filing of claims, *but claims founded upon such demands shall not share in any distribution to creditors of a person proceeded against under section 1016 until such claims have been definitely determined, proved and allowed.* Thereafter, such claims shall share ratably with other claims of the same class in all subsequent distributions. [¶] *An unliquidated or undetermined claim or demand within the meaning of this article shall be deemed to be any such claim or demand upon which a right of action has accrued at the date of the order of liquidation and upon which the liability has not been determined or the amount thereof liquidated."* (Italics added.)

In order to claim the amount of a reinsurance policy as an asset or deduction from liability, section 922.2[4] requires reinsurance contracts to contain an insolvency clause that the reinsurer's payment obligation for definite claims remains even if the reinsured company is insolvent and thus cannot pay its insured's claim: "(a) Credit for reinsurance shall be allowed a domestic ceding insurer as either an asset or a deduction from liability in accordance with Sections 922.4 and 922.5[5] only if the reinsurance contract contains provisions that provide, in substance, as follows: [¶] (1) The reinsurer shall indemnify the ceding insurer for any portion of the risk it has assumed according to the terms and conditions contained in the reinsurance contract. [¶] (2) In the event of insolvency and the appointment of a conservator, liquidator, or statutory successor of the ceding company, the portion of any risk or obligation assumed by the reinsurer shall be payable to the conservator, liquidator, or statutory successor on the basis of claims allowed against the insolvent company by any court of competent jurisdiction or by any conservator, liquidator, or statutory successor of the company having authority to allow such claims, without diminution because of that insolvency, or because the conservator, liquidator, or statutory successor has failed to pay all or a portion of any claims. Payments by the reinsurer as set forth in this subdivision shall be made directly to the ceding insurer or to its conservator, liquidator, or statutory successor, except where the contract of insurance or reinsurance specifically provides another payee of such reinsurance in the event of the insolvency of the ceding insurer. [¶] The reinsurance contract may provide that the conservator, liquidator, or statutory successor of a ceding insurer shall give written notice of the pendency of a claim against the ceding insurer indicating the policy or bond reinsured, within a reasonable time after such claim is filed and the reinsurer may interpose, at

---

[4]Section 922.2 was amended in 1996, effective January 1, 1997. The changes in the section after *Mission I* do not affect our analysis.

[5]These two sections define the types of credits to which conforming reinsurance policies are entitled (§ 922.4), and those to which nonconforming polices are entitled. (§ 922.5.)

its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the ceding insurer or its conservator, liquidator or statutory successor. The expense thus incurred by the reinsurer shall be payable subject to court approval out of the estate of the insolvent ceding insurer as part of the expense of conservation or liquidation to the extent of a proportionate share of the benefit which may accrue to the ceding insurer in conservation or liquidation, solely as a result of the defense undertaken by the reinsurer. [¶] (b) Payment pursuant to a reinsurance contract shall be made within a reasonable time with reasonable provision for verification in accordance with the terms of the reinsurance agreement. . . . [¶] (c) The original insured or policyholder shall not have any rights against the reinsurer which are not specifically set forth in the contract of reinsurance, or in a specific agreement between the reinsurer and the original insured or policyholder."

## THE AMENDED MISSION INSOLVENCY PLAN AND THE CHALLENGED ORDER

After we remanded the case to the trial court, the Commissioner prepared and the trial court approved an amended plan. The Commissioner argued and the trial court found the amended plan complied with sections 922.2 and 1025. The appellants disagreed.

The challenged portions of the approved amended plan state: "8. Any and all claims previously barred by prior orders or procedures in these proceedings shall remain barred. Any and all claims previously timely and properly filed as contingent, unliquidated, and/or undetermined claims, in whole or in part, shall be forever barred from participation in the Final Liquidation Dividend unless they were made Amended Claims. A 'contingent,' 'unliquidated' or 'undetermined claim' within the meaning of these proceedings shall be as defined in . . . Section 1025 as any claim or demand upon which a right of action had accrued at the date of the order of liquidation herein upon which the liability has not been determined or the amount thereof has not been liquidated. Any Amended Claim which is partly contingent, unliquidated and/or undetermined, and which portion is not ultimately amended to state a liquidated or determined amount pursuant to the process described in this Order, shall be subject to being barred by these provisions as to the contingent, unliquidated and/or undetermined portions of such claim. For the purposes of *submitting* an Amended Claim under this Amended Final Liquidation Dividend Plan, the holders of Amended Claims were permitted to use actuarial techniques, including but not limited to calculations of the present value of IBNR. *Notwithstanding this provision, the reinsurers of the Mission Companies shall be required to reimburse the appropriate Mission Company only to the extent such Amended Claims are liquidated and determined.*

"9. (A) The Commissioner shall establish reasonable procedures to allow the holders of Amended Claims to submit further proof in support of Amended Claims, if appropriate, including proof that prior contingencies have been removed and that claims have been reduced to actual liquidated amounts through payment or other resolution, in both instances including but not limited to proof of events occurring after the Final Dividend Claims Bar Date. The Commissioner shall review any such additional proof submitted and may allow and approve claims supported by legally sufficient proof that the Commissioner finds appropriate. All claims so approved shall be entitled to participate in the Final Liquidation Dividend and any claim which is rejected shall be subject to and governed by . . . Section 1032 and may participate in the Final Liquidation Dividend only if it is allowed after compliance with such Section. When a reasonable opportunity to submit supplemental proof has been provided to all holders of Amended Claims and all Amended Claims have been reviewed by the Commissioner, the Commissioner, in his discretion, may apply to the Court for an order, following notice to all interested parties . . . and an opportunity to be heard, to reject all remaining Amended Claims that, by that time, have not been converted to non-contingent, liquidated, and determined claims.

"[9.] (B) If legislation is hereafter enacted to authorize the Commissioner to estimate claims on the basis of actuarial principles or other means of estimation as may be defined in such legislation, then the Commissioner may utilize such legislation, according to its terms, in connection with this Amended Plan. If holders of Amended Claims or other interested parties have not been afforded a reasonable opportunity to submit proof of their Amended Claims or their objections to the approval of such Amended Claims consistent with the requirements of any such legislation, the Commissioner will afford such parties a reasonable notice and opportunity to submit such proof or objections before definitively ruling on such Amended Claims or otherwise implementing such legislation.

"10. As soon as practical after the Final Dividend Claims Bar Date, on a date determined by the Commissioner in his sole discretion (the 'Final Dividend Determination Date'), the Commissioner shall determine the total liabilities of the Mission Companies and/or the Mission Trusts as a result of all allowed Class 5 Claims and shall determine the total assets available to discharge such claims. . . . [¶] . . . [¶] A reserve (the 'Claims Reserve') shall be established, including a reserve for . . . []IBNR[] and future development of known claims, for any contingent, unliquidated or undetermined portion of all timely and properly filed Amended Claims and included in the Total Liabilities. To the extent practical, the Commissioner shall determine which reinsurance agreements relate to such claims and shall

notify the affected reinsurers as to such determinations and as to the amount of such reserves. *In no case, however, shall the reinsurers be required to pay for any such portion of such claims unless and until they are made certain and liquidated.* No reinsurer shall be required to pay any portion of any such Claims Reserve based on an estimation of the present value of the IBNR unless such payment is consistent with any future legislation permitting same. In the event of such future legislation and statutory provision, then the rights and duties of the reinsurers in such regard shall be governed by the terms of said legislation and the reinsurers shall be entitled to be heard in this Court as to any objections regarding any billings made to them by the Commissioner in such event. This Court hereby retains continuing sole and exclusive jurisdiction to determine all such matters.

"11. The Commissioner's determination of the Available Assets, the Claims Reserve, the Total Liabilities, and the Final Dividend Formula shall be a part of his administrative determinations as to allowance of claims and the Commissioner shall file notice of his determination of the Available Assets, the Claims Reserve, the reserve for operational future expenses, the Total Liabilities, and the Final Dividend Formula with the Court and shall provide reasonable notice thereof to the holders of all Amended Claims and other interested parties, including the reinsurers of the Mission Companies and/or the Mission Trusts. . . .

"12. The liability of all reinsurers to the Mission Companies and/or the Mission Trusts shall be determined on the basis of claims adjusted and allowed by the Commissioner, *provided, however, that reinsurers shall only be billed or required to make payments under their reinsurance agreements when such claims are finally liquidated and determined. [¶] The approval of the Amended Final Liquidation Dividend Plan should be without prejudice to such rights that the reinsurers of the Mission Companies and/or the Mission Trusts may now possess to audit and/or review and/or object to (pursuant to the . . . Insurance Code, including but not limited to Section 922.2 and under their individual reinsurance treaties, certificates or contracts with the Mission Companies and/or the Mission Trusts) claims filed with the Commissioner. Further, the approval of the Amended Final Liquidation Dividend Plan should be without prejudice to such rights as the reinsurers may otherwise have to assert that particular claims are not covered under the terms of their reinsurance arrangements and without prejudice to such rights as the reinsurers may now have under . . . Section 1031.*" (Italics added.)

ISSUES

(I) Appellants' primary contention is that the approved amended plan violates sections 922.2 and 1025 by forcing them to pay contingent unliquidated claims without adequate notice or opportunity to contest such claims.

As part of this claim, appellants argue the amended plan is vague, permits estimation of case reserves, denies them participation in claims adjudication, violates our earlier opinion, involves retroactive application of nonexisting legislation, and denies them their contractual rights to arbitrate these issues by retaining jurisdiction in the trial court. (II) The Illinois Insurance Commissioner claims the amended plan violates Illinois court orders governing Centaur's dissolution, and Borg-Warner claims the plan prejudices its rights by determining its liability in a related case.

### DISCUSSION

The standards governing our review remain the same as in the earlier appeal. (*Mission I, supra*, 46 Cal.App.4th at pp. 465-466.)

Appellants' primarily argue that, despite the amended plan's express prohibition on requiring payment from the reinsurers for IBNR claims until liability for them and their amounts are determined, and the plan's requirement of notice to the reinsurers before any such determination is made, the plan still violates sections 922.2 and 1025, because the Commissioner intends to violate these express plan provisions by estimating IBNR payments (and, impliedly, assuming liability for them) and fixing their amount without providing notice. Appellants also point to the language permitting IBNR claims holders to submit preliminary claims to the Commissioner based on estimates of their eventual cost as violating sections 922.2 and 1025.

These contentions lack merit. Permitting claims holders to submit estimated claims merely begins the process. The plan expressly requires notification to the reinsurers before any particular claim is determined, and expressly prohibits requiring payment for such claims until their liability and amounts are fixed. Thus, the plan does not violate either section or our earlier opinion. Moreover, the plan is not vague and does not compel retroactive application of later legislation, since it expressly preserves the reinsurers' right to challenge any such legislation before being compelled to comply. Likewise, the plan does not foreclose arbitration of claims disputes governed by arbitration clauses in the relevant policies; it merely reiterates that the trial court retains ultimate jurisdiction to decide and approve claims and Mission's final termination.

Borg-Warner owns Centaur, the defunct Illinois insurer whose liquidation is being managed by the Illinois Insurance Commissioner. Centaur was one of Mission's reinsurers. In a related case, the California Commissioner has sued Borg-Warner, seeking damages based on Centaur's liability to Mission

under the reinsurance policies. To a certain extent, Centaur's damages to Mission depend on the amount Mission ultimately will owe to its policyholders and claimants. Borg-Warner claims that because the plan permits the California Commissioner to fix Mission's assets and liabilities without Centaur's participation in that process, the California Commissioner then would argue that Centaur's liabilities and damages could not be relitigated in his damages suit against Centaur. This claim too lacks merit. First, the plan forbids the California Commissioner from estimating IBNR claims, and requires notice to Centaur and the opportunity to contest liability for and the amount of any claim. Second, Centaur could challenge any of the California Commissioner's determinations in court, and thus the California Commissioner cannot determine Centaur's damages without review. Moreover, to the extent liability and payments for IBNR claims involve different facts or legal determinations in the damages trial than in Mission's insolvency plan, Borg-Warner could so argue in the related case. The fact that the California Commissioner may argue the Mission insolvency determinations are res judicata does not keep Borg-Warner from disputing such a future argument, nor is it a reason to further delay the termination of the Mission insolvency. The plan does not fix Borg-Warner's liability as to any claim. The plan does not find Borg-Warner liable for any particular claim, nor does it set the amount of any particular claim. Borg-Warner retains all its rights to contest its liability for any claim and the amount of any claim for which it is found liable.

Finally, the Illinois Insurance Commissioner argues the plan permits the California Commissioner to determine Centaur's liability to Mission, so it violates the Illinois court order that the Illinois Commissioner will determine Centaur's liability in the Illinois proceeding. The California Commissioner has filed a claim on Mission's behalf in the Illinois proceeding. Like the Borg-Warner arguments rejected above, the plan prohibits the California Commissioner from estimating IBNR claims against Centaur or establishing their amounts without notice to Borg-Warner and the Illinois Commissioner as Centaur's representatives. Any such amounts will not be binding on the Illinois court. Any conflicts in the determinations of Centaur's liability to Mission in the Mission as opposed to the Illinois proceeding can be litigated and resolved in the future by the supervising court. In essence, Borg-Warner's and the Illinois Commissioner's arguments would be repeated if the other cases went first. Centaur's liability, if any, and the amount of any payments, to Mission will have to be litigated somewhere. The Mission insolvency need not be delayed until every other forum has had its say as to that amount. Because the plan does not establish liability for or the amount of particular claims, which will not be determined without notice and the opportunity to contest by Borg-Warner and the Illinois Commissioner, it does not violate the Illinois court orders.

We agree with the interveners that most if not all of appellants' challenges to the amended plan consist of claims that the California Commissioner will violate express provisions in the future, or that the actual handling of future claims disputes will violate the statutes. If so, we are confident the trial court will overturn such actions when challenged by interested parties. Moreover, we decline to issue an advisory opinion spelling out precisely how the notices should be worded, or what evidence should be considered or ignored, in determining particular claims. We leave those possible future problems, if they occur, to resolution when such actual controversies are presented to us.

## DISPOSITION

We affirm the trial court's order upholding the amended plan. Respondents are entitled to their costs.

Spencer, P. J., and Dunn, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.